## Fulton County Fiscal Court v. Southern Bell Telephone & Telegraph Co. et al.

Nov. 26, 1940.

As Modified Dec. 20, 1940.

18

20

H. H. Lovett, W. B. Amberg, B. B. Morris, E. J. Stahr and W. C. Tipton for appellant.

Webb &' Webb, W. B. Harris, E. R: Morton, H. T. Smith, Frank Carr, Steve Wiley, M. C. Anderson, Aubrey Hester, Jess F. Nichols, W. F. McMurry, D. L. McNeill, C. P. Mabry and C. K. Davis for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming in part and reversing in part.

Judicial validation of bonds proposed' to be issued by Fulton County to fund its floating debt is the subject of our review. The trial court held valid debts to the amount of $80,755.09 and approved the issuance of bonds for that sum. Warrants and notes to the amount of about $8,000 were held invalid as having been obligations created in excess of constitutional limitations. It appears that although the debt of Fulton County, valid and invalid, aggregates perhaps more than $520,000, the assessed valuation of property for the year 1933 (the basis of calculation for the bonds involved) was only $7,775,000. According to the report of the State Director of Post Audits made as of July 1, 1937, the fiscal court spent an average of $20,000 a year for a period of fifteen years in excess of the annual revenues of the county. The deplorable disregard of the law and elementary economics prior to January, 1934, with the resulting chaotic condition of the county's finances, is adverted to in Jones v. Fiscal Court of Fulton County, 275 Ky. 619, 122 S. W. (2d) 510. In Hale v. Fiscal Court of Fulton County, 282 Ky. 475, 138 S. W. (2d) 937; second appeal, 283 Ky. 599, 142 S. W. (2d) 115, we considered refunding of Road and Bridge Bonds. In this suit the county made defendants of 130 or more creditors or claimants and they were permitted to defend for all others. The petition set forth in detail the county's financial condition and the nature and amounts owing or claimed by the defendants. The defendants were duly served with processes and severally filed answers and counterclaims. Questions of validity and invalidity of each of many items were raised. Expert accountants made a complete audit of the county's fiscal affairs back to 1928 and prepared exhaustive reports. The case was submitted to a special commissioner, who reported the specific conditions. Based upon different theories of good or bad debts, he showed for each year the date upon which current revenues had been exhausted, with the consequent invalidation of obligations subsequently incurred. The case has been prepared in

accordance with both the letter and the intent of Section 186c-7, Kentucky Statutes. It has been well practiced and ably briefed so as to present the legal questions both in relation to the constitutional limitations and their particular application. To avoid possibility of confusion, it may be said that the case is to be determined by the interpretation of Section 157 of the Constitution in respect of "the income and revenue provided" each year before the decision in Payne v. City of Covington, 276 Ky. 380, 123 S. W. (2d) 1045, 122 A. L. R. 321.

Included in the aggregate debt of $520,000 above stated is $258,000 outstanding of an issue of $284,000 of road and bridge bonds voted under the terms of Section 157a of the Constitution, which, as has been many times held, are excluded from the debt limitations of Section 157 and Section 158 of the Constitution. It is conceded by all parties that these road and bridge bonds have no bearing upon questions pertaining to the validity of obligations incurred for other purposes, and are, therefore, eliminated from the consideration of the case at bar. Stratton v. Pike County, 269 Ky. 273, 106 S. W. (2d) 1014; Jones v. Fiscal Court of Fulton County, supra.

In 1922, the people of Fulton County voted to issue $100,000 of 5% bonds to fund its floating debt. Nothing was paid in liquidation of these bonds after 1932. In Jones v. Fiscal Court of Fulton County, supra, we approved the issuance of 2% bonds to the amount of $70,000 to refund the principal and unpaid interest of these voted bonds, and the originals were so converted.

In 1928, the fiscal court, without a vote of the people, issued 5¼% bonds to the amount of $115,000 to fund the floating debt created subsequent to 1922. They mature September 1, 1948. The validity of this issue was assumed in the Jones case, and it will be so presumed now. Whitley County v. Hermann, 263 Ky. 440, 92 S. W. (2d) 797. It appears that through subterfuge or otherwise the proceeds of these bonds were not wholly applied to the purposes for which they were issued. On January 1, 1929, the county had $100,000 cash from the sale of these bonds, and borrowed over $20,000 in anticipation of that year's revenue. The year was closed with a floating debt of $132,000 and no cash on

hand. It is suggested that that was the year of the election of county officers. It further appears that no sinking fund has been provided for these bonds and the interest has been only partially paid.

On December 31, 1933, there were outstanding notes and warrants to the amount of $88,805.91, which it is proposed to fund by the present issue of bonds.

Basic of all considerations and calculations are two questions, namely, whether on December 31, 1933, or on any particular date when an obligation was incurred, (a) the debt limitation of 2% on the value of taxable property in the county prescribed by Section 158 of the Constitution had been reached, or (b) the current debt limitation measured by the anticipated revenue from the levy of the maximum tax rate of 50 cents prescribed by Section 157, the poll tax authorized by Section 180, and that permitted or required by Section 159 of the Constitution, plus miscellaneous income, had been exceeded.

■ The circuit court ruled that both the voted bonds of 1922 and the funding bonds of 1928 were outside or excluded from the limitation of Section 158 of the Constitution. The effect of the ruling was to remove that limitation from the case since the floating debt alone was well within the permission of Section 158. But it and the bonded debt combined exceeded the limitation. Apparently the excess ranged from $48,000 on January 1, 1929, to a high of $168,700 on January 1, 1933.

There is authority for the court's ruling although it is opposed to the general current of our opinions. The discord and confusion that exists leads to a review and reconsideration of the interpretation not only of Section 158 but also of 157 of the Constitution, as they affect the point of maximum indebtedness, in the aggregate and current during the fiscal year.

Section 158 of the Constitution explicitly declares that no county shall be "authorized or permitted to incur indebtedness to an amount, including existing indebtedness, in the aggregate exceeding" the maximum of two percentum (2%) "on the value of the taxable property therein, to be estimated by the assessment next before the last assessment previous to the incurring of the indebtedness." There is a proviso, not material

here, concerning debts contracted before the adoption of the Constitution or for an emergency. Following that is the provision:

"Nothing herein shall prevent the issue of renewal bonds, or bonds to fund the floating indebtedness of any city, town, county, taxing district or other municipality."

Different views, reflected in many opinions, have existed among the members of the court as to whether this last quoted provision is confined to debts created before the adoption of the Constitution, or is authority for funding debts subsequently incurred. The reasons for the latter view, which has prevailed as the ruling of the court, are summarized in Hall v. Fiscal Court of Fleming County, 239 Ky. 425, 39 S. W. (2d) 656. And the finality of that interpretation is recognized in Hill v. City of Covington, 264 Ky. 618, 95 S. W. (2d) 278.

In Vaughn v. City of Corbin, 217 Ky. 521, 289 S. W. 1104 (overruled in part in Payne v. City of Covington, supra), there was involved the question of power of the city to issue $75,000 of bonds to fund a floating debt which had accumulated through the failure of the council to levy a sufficient tax. Voted bonds to the amount of $84,000 were outstanding in excess of the sinking fund on hand. The power of the city to issue the funding bonds was recognized. This carried the city's debt beyond the limitations prescribed by Section 158 of the Constitution. But the court held that the last provision of that section, above quoted, excepted funding bonds from the operation of the limitation of debt therein declared, and that the new bonds could be issued. That conclusion was expressed in the face of the explicit language of that section. Its fallacy is revealed by the observation in the opinion that the issuance of bonds to fund a floating debt merely changes the form. Carried further, it would have to be held that by a mere resolution of the legislative body of a taxing district transmuting warrants or notes into bonds, the entire section of the Constitution could be avoided, clear and mandatory though it is. Furthermore, the opinion implied that voted bonds would have to be regarded although others would not, the effect being that the taxpayers might not themselves nullify the Constitution and create excessive debts but a majority of the councilmen or magistrates could do so.

That part of the Vaughn opinion, to which we refer, was quoted in City of Frankfort v. Fuss, 235 Ky. 143, 29 S. W. (2d) 603. But the excessive debt being dealt with there was due to a large indebtedness carried over from a period antedating the adoption of the present Constitution, for which specific provision was made in Section 158. All other opinions dealing with the subject are to the contrary.

In City of Winchester v. Nelson, 175 Ky. 63, 193 S. W. 1040, 1041, upon the authority of a number of previous decisions, it is held that the limit of indebtedness "may not be exceeded for any purpose, or under any circumstance, except in certain emergencies," and that:

> "In estimating the amount of indebtedness permissible under this section of the Constitution, it is necessary to include in the estimate the proposed indebtedness and all outstanding contracted indebtedness, contracted in a previous year or years, whether bonded, floating, or of whatever kind [Citations], but the current expenses of the city for the current year are not to be included in the estimate of total indebtedness under Section 158 (O'Bryan v. City of Owensboro), supra [113 Ky. 680, 68 S. W. 858, 69 S. W. 800], although they must be included in estimates of indebtedness under the limitations of Section 157."

It had been previously written in O'Bryan v. City of Owensboro, 113 Ky. 680, 68 S. W. 858, 859, 69 S. W. 800: "Section 158 provides a limitation upon the amount of indebtedness which may be incurred with the assent of two-thirds of the voters of a municipality, and forbids municipalities to incur indebtedness to an amount, including existing indebtedness, in the aggregate exceeding" such constitutional limitations. There has been no deviation from that declaration except in the Vaughn case. That funding bonds, like all other evidences of debt, are within the limitation prescribed by Section 158, was recognized in the following cases, among many others: Wilson v. City of Covington, 220 Ky. 798, 295 S. W. 1068; City of Frankfort v. Fuss, supra; Randolph v. Shelby County, 257 Ky. 297, 77 S. W. (2d) 961; Shearin v. Ballard County, 267 Ky. 737, 103 S. W. (2d) 292; Payne v. City of Covington, supra.

That voted bonds are included in the terms of Section 158 is admitted by all parties and is so manifest as scarcely to need citation of opinions to that effect; but among the cases recognizing that fact may be cited City of Marion v. Haynes, 157 Ky. 687, 164 S. W. 79; Nelson v. Board of Education, 213 Ky. 714, 715, 281 S. W. 808; Matz v. Newport, 265 Ky. 126, 95 S. W. (2d) 1071; Payne v. City of Covington, supra.

Counsel for appellees construe the judgment as having included the voted bonds in the consideration of the limitations of Section 158, but the judgment expressly states otherwise. They take the position in reference to the non-voted bonds of $115,000 that only the annual appropriation to the sinking fund and current interest need be regarded in applying the 2% debt limit, and it seems such was the ruling of the court. Appellees rely upon the Vaughn case and its quotation in the Fuss case, and upon an expression in Hogan v. Lee Fiscal Court, 235 Ky. 100, 29 S. W. (2d) 611, 614, wherein, reading Sections 157 and 158 of the Constitution together, it is said:

"The only thing which it is necessary to consider and charge up against the county in a current year is the amount of interest and the sinking fund that must be set apart to take care of the outstanding funded indebtedness."

As presently pointed out, this was said in relation to the construction of Section 157 as it pertains to charges against current revenues. It is a misconstruction of that opinion to say that it holds that a funded debt is excluded from the limitations of Section 158.

As we have shown, Vaughn v. City of Corbin, supra, is out of line with all others. To that extent it is, therefore, hereby overruled. It was error for the court to disregard the limitations of Section 158 of the Constitution. This will apparently adversely affect the rights of those who hold warrants or notes of the county issued for non-governmental obligations.

As has been said in reference to the adoption of a written constitution that the people have protected themselves from themselves, so it may be said that by Section 158 the people of Kentucky have protected themselves from excessive public local debt, even though the largest majority might desire and vote for it. Ex-

cepting the specific provisos and the possible exigencies of carrying on necessary and essential governmental functions, imported into them as a more imperative policy, the limitations of debt prescribed by Section 158 are mandatory prohibitions of public officials and, as well, of those who may contract with them. It must be regarded by all under the penalty of malfeasance in office by the one group and of loss of property by the other. The aggregate of all debts of a taxing unit of government in whatever form they are is the sum to be considered in relation to the maximum permitted by Section 158. Whenever that amount shall be reached any subsequent obligation is void.

■ We turn to the application of Section 157 of the Constitution. Its pertinent part is here quoted for ready reference:

"The tax rate of * * * counties * * * shall not, at any time, exceed * * * fifty cents (50c) on the hundred dollars ($100.00) * * *. No county * * * shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void. Nor shall such contract be enforceable by the person with whom made; nor shall such municipality ever be authorized to assume the same."

This plainly prohibits any indebtedness for any purpose beyond the revenues of the year without the assent of two-thirds of the voters of the county and protects the people from the improvidence of their officers. Until the opinion of Payne v. City of Covington, supra, the term "revenue provided" was construed to mean the revenue provided by and in the same section of the Constitution rather than that particularly provided each year by the local taxing body. Since the fiscal court of Fulton County always levied the maximum regular rate of 50 cents, the difference is not important here except in relation to an extra levy for the satisfaction of the voted bonds as we shall presently see.

For a while Section 157 was construed as requiring that a valid debt at the close of the fiscal year must be

carried over and taken into consideration in the financial operations of the succeeding year. See, among others, City of Winchester v. Nelson, supra; Payne v. City of Covington, supra. But the court, influenced by the necessity of reading Section 158 and 157 together in order to make a complete regulation, later imported into Section 157 the provision of Section 158 which authorizes the funding of a floating debt and changed the interpretation. It found in this provision a means of easier liquidation of an accumulated legal indebtedness. By funding the debt, the county or municipality is required to consider and charge up against its current revenues in succeeding years only the amount of interest and sinking fund payable during the year. Hogan v. Lee Fiscal Court, supra.

The construction of Section 157 (departing from the principle of Nelson County Fiscal Court v. McCrocklin, 175 Ky. 199, 194 S. W. 323) that each year's financing program stands by itself so that a deficit at the end does not have to be carried over into the following year and paid out of the current revenues, but may be carried along indefinitely or liquidated by bonds, has been pretty regularly observed. The conception is that a debt valid when created remains valid and binding until paid. The subject was given full consideration in City of Frankfort v. Fuss, supra, and has been adhered to down to this date, with the exceptions presently noted. The opinion of Payne v. City of Covington, supra, declares that the construction to be observed in the future is that any obligation is void which exceeds the revenues that it was reasonably anticipated would be produced by the taxes actually levied and the miscellaneous income which could be actually counted upon. This, together with the observance of the county budget act of 1934, now Section 1851c-1 et seq., Kentucky Statutes, will make invalid any debt existing at. the end of the year by reason of over-anticipation. And the County Debt Act of 1938, Section 938q-1 et seq., Kentucky Statutes Supp. 1939, will be helpful in assisting and controlling the financial operations of the counties. County Debt Commission v. Morgan County, 279 Ky. 476, 130 S. W. (2d) 779. As has already been said, we are dealing with conditions which arose before that decision and before that statute was enacted. Our attention is called to some cases which apparently departed

from the rule that each year's obligations may be or may have been treated as independent of succeeding years. There are several opinions in which the McCrocklin case and others of that class are adverted to, but an analysis will show the decisions themselves were upon different grounds. Cf. King v. Christian County Board of Education, 229 Ky. 234, 16 S. W. (2d) 1053; Adair County Farm Bureau v. Fiscal Court of Adair County, 263 Ky. 23, 91 S. W. (2d) 537. In Russell County Fiscal Court v. Russell County, 246 Ky. 529, 55 S. W. (2d) 337, it is stated that the entire revenue that could be anticipated for the ensuing year of 1930 was not over $15,500, of which approximately $12,500 would be needed to pay the salaries of constitutional officers and the necessary running expenses of the county government, leaving only $3,000 for other purposes. Since the outstanding valid debt at the beginning of the year was much more than that sum, it was held the county had no right to make an appropriation for the salary of an agricultural agent, the employment of which was not essential to the conduct of the ordinary business of the county. This would seem to be a throwback to the rule of the McCrocklin case. But it is to be observed that the case was dealing with a prospective expenditure. The implications of the opinion being in conflict with the rule then so well established and successively approved are not to be regarded as authoritative. Of like class is Jackson County v. Maden, 271 Ky. 535, 112 S. W. (2d) 986.

It has been held right along that a fiscal court may make its contracts in reasonable, conservative and good faith anticipation of its revenues for the year and borrow money upon the faith thereof, taking into consideration the experiences of the past in relation to failures of collection. Shearin v. Ballard County, 267 Ky. 737, 103 S. W. (2d) 292. There has been statutory authority for this since 1934. We shall not undertake here to define comprehensively what is reasonable and good faith anticipation. It certainly includes the consideration of a failure to collect the entire levy, the costs of collection and the experiences of the past, with conservative regard for the prospective normal situation. The right of estimation, however, is only the right to proceed subject to encountering the pitfall which may lie ahead if there should be an overestimation. It

may well be doubted if it ever was the intention of Section 157 of the Constitution to permit a county or municipal corporation to incur a debt in any manner which could not be paid before the end of its fiscal year even on the basis of a bona fide anticipation. Section 4281u-4, Kentucky Statutes, is to the same effect, but it was regarded inoperative in this respect because opposed to Section 157 of the Constitution as interpreted. It is now effective under the interpretation declared in Payne v. City of Covington, supra. It is not necessary to say here whether a casual deficit due to error of a good faith judgment is void or is to be carried over into the succeeding year as a debt of that year, as was held in the McCrocklin case and others which followed it. This is left open because the instant case does not call for a decision. As we have stated, this case is to be determined by the construction of the Constitution given before Payne v. City of Covington, supra. It is the full amount of money which could have been raised and not that which was actually raised that determines whether or not any indebtedness incurred during a particular year is valid. Shearin v. Ballard County, supra; Hockley v. Carter County, 267 Ky. 250, 101 S. W. (2d) 928, 929. The former fiscal courts of Fulton County had regard only for the element of anticipation—throwing all restrictions to the winds. The circuit court, as was proper, regarded the restrictions retroactively. But we are constrained to hold that in certain fundamental respects that accounting is erroneous.

(a) The court did not take into consideration any expenditure or liability for interest or annual sinking fund charges for the two bond issues. It appears that at least during the years involved there was no special levy made and, therefore, no special revenue collected or sum allocated to this purpose. Section 159 of the Constitution is as follows:

"Whenever any city, town, county, taxing district or other municipality is authorized to contract an indebtedness, it shall be required, at the same time, to provide for the collection of an annual tax sufficient to pay the interest on said indebtedness, and to create a sinking fund for the payment of the principal thereof, within not more than forty years from the time of contracting the same."

The section is self-executing; but Section 4281u-2,

Kentucky Statutes, puts it in operation. Whenever a taxing district creates a bonded indebtedness it must provide by taxation, to be collected annually throughout the life of the bonds, a sum sufficient to amortize the debt and pay it when and as it shall become due. This is mandatory upon all local legislative bodies as well as the General Assembly of the State. Ballard v. City of Shelbyville, 180 Ky. 135, 201 S. W. 452; Fox v. Boyle County, 245 Ky. 27, 53 S. W. (2d) 192. The history of this section of the Constitution is given in McDonald v. City of Lexington, 253 Ky. 585, 69 S. W. (2d) 1065, and the sound reasons for it are stated to be not only to prevent one generation from thrusting a debt upon another, but to protect the creditors and ease the burden of the taxpayers. It was therein held that an ordinance providing for a sinking fund which postponed the tax levy for five years and provided for the accumulation of the sinking fund during twenty of the twenty-five years covered by the issue was ineffective because contrary to the terms of Section 159 of the Constitution. The County Budget Act of 1934 specifically requires the allocation annually to designated funds of proportional sums equal to what shall be necessary to pay the yearly interest and the principal of bonds at maturity. Section 1851c-6. The Statutes prescribe penalties for violation of that law. Section 1851c-11; Section 4281u-4.

The imperative law of the Constitution and of the Statutes applies alike to bonds issued by authority of a special referendum vote and to bonds issued by resolution, order or ordinance of a local legislative body to fund a valid floating debt. Herd v. City of Middlesboro, 266 Ky. 488, 99 S. W. (2d) 458. But there is or may be an important difference in the tax which may be levied for the liquidation of bonds according to their class.

For a debt created or, as in the present instance, specially assumed by a vote of the people, the county or other taxing district is authorized by Sections 157 and 159 of the Constitution to levy a special tax in addition to the regular maximum rate prescribed by Section 157 which, in the case of a county, is 50 cents on the $100. McCrocklin v. Nelson County Fiscal Court, 174 Ky. 308, 192 S. W. 494; Hammond v. Lester, 159 Ky. 310, 166 S. W. 976; City of Winchester v. Nelson, 175 Ky. 63, 193 S. W. 1040; Nall v. City of Elizabethtown, 200 Ky. 321, 254 S. W. 893; City of Frankfort v. Fuss,

supra; Wheeler v. City of Hopkinsville, 269 Ky. 289, 106 S. W. (2d) 1016. Therefore, in determining the amount of annual income by the standard permitted prior to Payne v. City of Covington, supra, the county was authorized to consider the yield from an additional levy which might have been imposed for the payment of annual interest and a proportionate part of the sinking fund for the voted bonds, having regard for the investment yield. Cf. E. T. Lewis Company v. City of Winchester, 140 Ky. 244, 130 S. W. 1094; Carter v. Krueger & Son, 175 Ky. 399, 194 S. W. 553. Obviously, if in ascertaining whether current expenditures exceeded current revenues both the yield which might have been provided by a special tax and the charge which ought to have been made against it be disregarded, the same end or result is reached. It was held in City of Winchester v. Nelson, supra, and Ballard v. City of Shelbyville, supra, that in comparing a city's annual indebtedness with its annual income a debt created pursuant to a vote of the people is not to be considered. Therefore, the trial court was correct in not regarding as a current debt the obligation to provide for the liquidation of the voted bond issue of 1922. It may be observed that this issue is different from that considered in City of Hopkinsville v. Wheeler, 269 Ky. 292, 106 S. W. (2d) 1017, where in submitting the question of issuing school bonds it was expressly conditioned that the tax to be levied for the sinking fund should not exceed the regular specific constitutional limitation. We held that because of this no additional tax above the limit stated in Section 157 of the Constitution could be subsequently laid to care for the sinking fund, the same having been in part diverted to general purposes by the city commissioners.

(b) The obligation to satisfy according to its terms the annual interest and proportionate part of the principal of the bond issue of 1928 for $115,000 to take up a floating debt is in a different category. Those charges must have been and must be paid out of the regular, general and current revenues (the bulk of which is from the maximum of 50 cents ad valorem tax). Parsons v. Arnold, 235 Ky. 600, 31 S. W. (2d) 928. It was the duty of the fiscal court each year to provide for these obligations out of those revenues by a special allocation of the levy, and to keep them as special invio-

late funds, under the mandatory requirements of Sections 159 and 180 of the Constitution, and Section 4281u-2 of the Statutes. Therefore, the payments actually made and those which should have been made annually for the interest and sinking fund for this bond issue should have been and must be regarded in determining whether there was in any one year payments made or obligations assumed in excess of the regular current revenues. Wilson v. City of Covington, 220 Ky. 795, 295 S. W. 1069; Hogan v. Lee Fiscal Court, supra; City of Frankfort v. Fuss, supra. The trial court erroneously disregarded these debts and charges. It may be added that the misappropriation of part of these sinking funds, or the sums which should have been paid into them, and the interest on the bonds, was a breach of trust by the county officers for which there may have been personal civil liability. Boyd County v. Boyd Fiscal Court, 247 Ky. 183, 56 S. W. (2d) 959; City of Newport v. McLane, 256 Ky. 803, 77 S. W. (2d) 27, 96 A. L. R. 655; Hays v. Isaacs, 275 Ky. 26, 120 S. W. (2d) 737. But the balance of the bonds unpaid remains as a valid debt of the county and proper to include in any refunding bond issue. Wheeler v. City of Hopkinsville, supra. The fiscal court of Fulton County since 1934 has had regard for the unfortunate financial condition which it inherited and is endeavoring to bring order out of chaos. It is assumed that the proceeds of the bonds now sought to be judicially approved will be devoted to the satisfaction of the balances due on previous issues. See City of Hopkinsville v. Wheeler, supra.

(c) Section 2739g-2d of the Statutes gives to each of the respective counties for its county road fund 1/240 of the registration fees of motor trucks. The trial court mingled this money with the general funds and charged all expenditures against a single fund. We think this was error. Cf. Fiscal Court of Scott County v. Davidson, 259 Ky. 498, 82 S. W. (2d) 801. The receipts from the truck registration fees and the expenditures for county roads should first be considered independently of general revenue and expenditures. Disbursements on this account were larger than the receipts. The difference is chargeable against the general revenues as a portion of the regular 50 cents is available for county road purposes. Section 1840, Statutes.

(d) As we understand the record, the full amount

that it was possible to realize by the hypothetical application of the maximum rates was used by the court in the calculations, and then the delinquent taxes for that year were added to the hypothetical revenues of the succeeding years in which collected. Unless the possibility of failure of 100 percent collection was taken into consideration and allowances therefor made in the estimate of the revenues of the previous years in which those taxes were payable, it is apparent that the inclusion of delinquent taxes collected was a duplication.

■ Because of the failure of taxing districts to respect the tax limitations of Section 157 and the debt limitations of 158 of the Constitution, the court has been confronted several times with a situation which required the importation of an exception into those sections, namely, that obligations for essential governmental services and functions are valid though they exceed the limitations. But the authorities generally are not uniform on this point, some courts holding all excess is void; that it is immaterial that the debts are incurred for governmental expenses and the courts may not extend pay-as-you-go provisions by implication. However, our interpretation seems founded on sound reasoning and apparently is in accord with the majority view where the constitutional provision is similar. Smartt v. Com'rs of Craig County, 67 Okl. 141, 169 P. 1101, L. R. A. 1918C, 313; 14 Am. Jur. 228; 20 C. J. S., Counties, Section 225, p. 1090. We have always held that every taxing unit must assure the payment of expenses of the usual and current administration of the government which it was organized to provide; that such is the imperative implication of the Constitution as a whole. The purpose of the limitations is to protect the people from improvident contracts, voluntarily assumed, and it is not thought they refer to expenses of government, which are compulsory obligations cast upon the local unit. If it were otherwise, the "fundamental safeguards and bulwarks of organized society" would be destroyed. Hopkins County v. St. Bernard Coal Company, 114 Ky. 153, 70 S. W. 289, 24 Ky. Law Rep. 942; Nelson County Fiscal Court v. McCrocklin, 175 Ky. 199, 194 S. W. 323; Breathitt County v. Cockrell, 250 Ky. 743, 63 S. W. (2d) 920, 92 A. L. R. 626; Adair County Farm Bureau v. Fiscal Court of Adair County, 263 Ky. 23, 91 S. W. (2d) 537; Ballard v. Adair County, 268 Ky. 347, 104 S. W.

(2d) 1100. As more poignantly said, in Pulaski County v. Richardson, 225 Ky. 556, 9 S. W. (2d) 523, 526, "a county cannot commit suicide," and must continue its government as an arm of the state. If the money which should have been reserved for the payment of these essential expenses has been spent for other purposes, public policy requires that the obligations representing those which are unpaid shall be paid. Where, as in this case, they cannot be paid in cash they may be covered by bonds. Wheeler v. City of Hopkinsville, 269 Ky. 289, 106 S. W. (2d) 1016. They are preferred and until paid the fiscal court can not validly pay any debts or other claims. Breathitt County v. Cockrell, supra. But the satisfaction of warrants issued for these governmental claims must be out of the revenues provided within the constitutional limitations of Section 157, and no levy beyond those prescribed rates is permitted. Hockley v. Carter County, 267 Ky. 250, 101 S. W. (2d) 928; Landrum v. Ingram, 274 Ky. 736, 120 S. W. (2d) 393. In short, the incurrence of debt for governmental purposes is valid though the results exceed the limitations; but payment must be paid out of funds raised within those limitations.

The question is presented as to how the situation is to be regarded, particularly in a retroactive accounting. It was at all times the duty of the fiscal court to earmark enough of the legally anticipated revenue to take care of all the governmental expenses for the year and to reserve that sum. Nelson County Fiscal Court v. McCrocklin, 175 Ky. 199, 194 S. W. 323; Carter v. Krueger & Son, 175 Ky. 399, 194 S. W. 553 (overruled on another point, Payne v. City of Covington, supra); Russell County Fiscal Court v. Russell County, 246 Ky. 529, 55 S. W. (2d) 337; Hockley v. Carter County, supra; Bernard v. McFarland, 267 Ky. 210, 101 S. W. (2d) 913. When the balance of the revenue anticipated was spent or covered by warrants or other obligations, then there was an exhaustion of revenue. Knott County v. Michael, 264 Ky. 36, 94 S. W. (2d) 44. Any money paid out and any obligation assumed thereafter for non-essential matters was illegally paid and assumed. Randolph v. Shelby County, 257 Ky. 297, 77 S. W. (2d) 961; Stratton v. Jessamine County, 257 Ky. 302, 77 S. W. (2d) 955. And such outstanding obligations, being void, cannot be funded.

Because the establishment of the sinking fund and payment of interest on bonds is a provision of the Constitution, and the fund often declared to be inviolate (also Section 4281u-3, Statutes), we are not sure that such fixed charges should not be placed next in order as preferential and that the validity of non-government expenditures and warrants be held to depend upon whether such charges added to the reserve for governmental expenses had exhausted the revenues. It does not appear that this has been the construction of the law heretofore, since the theory is that funding bonds are but substitutes for warrants and notes whose integrity is dependent upon the financial status of the county or municipal corporation at the time the debts were incurred, the bonds being but evidences thereof. Were these voted bonds issued for a special purpose, as for a particular public improvement, the preferential character of the annual charges could not be doubted. But in view of the strict accounting now being required by the County Budget Act, Section 1851c-1 et seq., Statutes, with both criminal and civil liabilities expressly imposed for the misapplication of such funds, we need express no further opinion. The unpaid funded bonds are to be deemed as valid obligations incurred previous to the current year. The failure to reserve money for their payment does not, of course, affect the liability of the promisor. Therefore, the amount may be refunded now.

It may not be amiss to observe that the expenditure for other things of a substantial part of those funds reserved for current governmental expenses and other special purposes was a misappropriation by the officials and an unlawful receipt by the recipients. Sections 4281u-2 and 4281u-4, Statutes; Boyd County v. Boyd County Fiscal Court, 247 Ky. 183, 56 S. W. (2d) 959; Wheeler v. City of Hopkinsville, supra. If any recovery should be had of these diverted funds, it must be put where it should have gone and been held.

We appreciate that the conclusions herein expressed will cause a large loss to many holders of the county's obligations, who accepted them in good faith for money loaned or services rendered or merchandise sold to the county. But it must be remembered that one of the elementary as well as fundamental principles of applied political economics is that those who contract with public officers are chargeable with knowledge of

the limitations upon their powers and deal with them at their peril. In this case it is difficult to believe that any one dealing with the former members of the fiscal court of Fulton County did not have actual knowledge of the extreme evasion and disregard of those limitations. Since the revised calculations upon the different predicates outlined will materially change the results as to validity of many notes and warrants, we reserve other questions presented as to particular claims.

The judgment authorizes the issuance of bonds to the amount of $27,365.40, representing governmental expenses. It is conceded by all parties that the classification is correct except as to a few negligible items, which are waived. The court also regarded as valid a note due Mrs. W. H. Brown for $7,000 with interest. The original debt was created long ago. It was in part included in obligations to be funded in 1922 and entirely in the issue of 1928, but the proceeds in each instance were used for other purposes and this obligation never paid. Instead of paying it on this last occasion, resort was had to the subterfuge of re-borrowing the money as a new transaction, but in reality there was a renewal. It was subsequently renewed from year to year. The debt being valid when created, it has continued to be valid, hence it was proper to include it in the present issuance of bonds. The judgment is affirmed as to these two items.

The American Surety Company was made a party defendant on the idea of a possible contingent liability to the county. A demurrer to the petition as against it was sustained. That was manifestly proper and it is agreed by all parties that the judgment as to that defendant should be affirmed, and it is so ordered.

As this was a proceeding by the county seeking to have its action in funding its debts validated, and the statute placed the burden upon the county to establish their validity, costs of the suit should be paid by the county, and it is so ordered.

The judgment is affirmed on cross appeals of the Universal Laboratories and Germo Manufacturing Company.

To the extent the judgment held claims or obligations void and therefore not subject to being bonded it is affirmed.

The application of the several principles and rulings declared to other particular items not expressly made, and other questions not herein disposed of, are reserved.

Except to the extent stated, the judgment is reversed and the case remanded for consistent proceedings.

Whole court sitting except Judge Perry.

Judge Cammack dissents from so much of the opinion as continues to hold that funding bonds may be issued for floating debts created subsequent to the adoption of the Constitution, and that the tax limitations of Section 157 of the Constitution may be exceeded to liquidate bonds voted by the people. It is his view that on the first proposition the court should return to the holding in Nelson County Fiscal Court v. McCrocklin, 175 Ky. 199, 194 S. W. 323. See also dissenting opinion of Judge Rees and concurred in by Chief Justice Thomas and Judge Dietzman, in City of Frankfort v. Fuss, 235 Ky. 143, 29 S. W. (2d) 603. On the second point it is his view that the court should return to the holding prior to City of Winchester v. Nelson, 175 Ky. 63, 193 S. W. 1040. See City of Marion v. Haynes, 157 Ky. 687, 164 S. W. 79.