# Lincoln National Bank, Inc., et al. v. County Debt Commission et al.

June 11, 1943.

644

Alfred Holman and Woodward, Dawson & Hobson, for appellants.

Hubert Meredith, Attorney General, and M. B. Holifield, Assistant Attorney General, for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—

Affirming in part and reversing in part.

When this proceeding began before the State Local Finance Officer, Magoffin County had outstanding funding bonds in the principal sum of $42,000, of which $4,000 were past due, and had defaulted in interest payments in the sum of $10,216.25. The greater part of the bonds bear 6% interest and the others 5½%. The county also had unpaid warrants or a floating debt of about $32,500, on which there was unpaid interest amounting to more than $5,000. The fiscal court proposed as of April 1, 1942, to issue 4% refunding bonds maturing in multiples of $1,000 annually over a period of 30 years for the en-

tire indebtedness of $89,500. A hearing was held on the county's application for approval in accordance with sec. 938q-4, Ky. Statutes, Supp. now KRS 66.310. Holders of the several issues of bonds, taxpayers and other interested persons were represented as classes. It appeared that the holders of most of the bonds are willing to effect an exchange, or at least that a company engaged in handling municipal bonds, and which has assisted the county without expense to it in this attempt at refinancing, has an option to purchase the old bonds and will take all of the proposed new ones at par.

The State Local Finance Officer declined to approve the issuance of the bonds upon the ground that the financial condition and prospects of the county did not warrant a reasonable expectation that the maturities of principal and interest can be met when due without seriously restricting other expenditures of the county and that the refinancing would not serve the best interests either of the county or a majority of its creditors. The county's application to issue bonds to fund its floating debt appears to have been abandoned before the Finance Officer rendered his decision. It related, therefore, to a refunding issue of $52,000. The officer added his opinion that all the outstanding bonds were or should be regarded as valid. The County Debt Commission confirmed his findings and decision of disapproval. The bond holders, the county, the members of the fiscal court and the representatives of the taxpayers filed an appeal in the Franklin Circuit Court (KRS 66.310). Holders of warrants intervened with an objection to the approval of the proposed refunding of the bonds upon the ground of discrimination against themselves and other like creditors of the county. They pleaded that the county should be required to adopt a plan of funding and refunding all of its indebtedness, alleging that there would be sufficient revenue thus to liquidate all of it.

The circuit court (1) affirmed the decision of the County Debt Commission disapproving the proposed bond issue upon the ground stated. He further adjudged that (2) refunding the bonds without making provision for payment of the floating debt would be unjust and discriminatory; (3) the statute is valid which authorizes the State Local Finance Officer and the County Debt Commission to disapprove the issuance of bonds upon the grounds stated; (4) the so-called road and bridge bonds

issued March 1, 1930, are valid; but (5) the finding that so-called jail bond issued April 15, 1916 ($1,000 of which only is outstanding), and so-called road and bridge bonds of November 1, 1928 ($15,000 of which are outstanding), were valid "is not supported by any evidence." He reversed the decision to that extent and remanded the case to the County Debt Commission "for proceedings consistent herewith."

The appellants in the circuit court are the appellants here. The questions to be decided are essentially (1) whether the statute relating to the powers of the State Local Finance Officer and the County Debt Commission applies to refunding of bonds theretofore issued or is confined to the issuance of new bonds; (2) if it is applicable, then whether (a) it is invalid as usurpation of discretionary powers of the fiscal courts both in respect to action and claimed discrimination; and (b) the conclusions of the administrative officers and the circuit court are supported by the facts; (3) whether the court had jurisdiction or authority to adjudge that the two bond issues had not been proved to be valid; (4) if the court had that power, whether his judgment is erroneous.

We first dispose of the questions of statutory construction in which are involved those of power and procedure. No material change was made by the Kentucky Revised Statutes in the original act establishing the offices of State Local Finance Officer and the County Debt Commission and prescribing their duties with corresponding delimitation of powers of fiscal courts. Chap. 31, Acts of 1938, 1st Ex. Session. The Revised Statutes went into effect while this case was pending in the circuit court. Because of that condition and the prospective effect of the decision, we construe the Kentucky Revised Statutes as related to the questions before us rather than the Kentucky Statutes. The authority of the administrative officers and of the circuit court is found in KRS 66.310.

■ KRS 66.310 (1) declares:

"(1) No county may contract an indebtedness which together with all other indebtedness of the county, is in excess of one-half of one percent of the value of the taxable property therein, as determined by the next preceding complete assessment, and issue valid bonds therefor, without having first secured the written approval of the State Local Finance

Officer. Any other bonds to be issued or reissued by any county may be submitted for approval as hereinafter provided. When the fiscal court of any county has petitioned the State Local Finance Officer under KRS 66.320 for assistance in formulating a plan for reorganizing its debt structure, or has received the approval of any issue or reissue of county bonds voluntarily as provided in this section, all bonds thereafter issued or reissued by the county must be approved as provided in this section.''

It is to be observed that the limitation of indebtedness which may be contracted and funded is one-fourth of the constitutional maximum. Section 158, Kentucky Constitution. There is no purpose to cut down the constitutional maximum, but to declare that before indebtedness may be created in excess of the statutory percentage the procedure must be observed. See County Debt Commission v. Morgan County, 279 Ky. 476, 130 S. W. (2d) 779. So far as it relates to new obligations, the statute is clearly mandatory. The second sentence states that the issuance of ''any other bonds * * * may be submitted for approval,'' and the third sentence speaks of receiving approval of ''any issue or reissue of county bonds voluntarily.'' There are other statements in the section which indicate that the submission to the State officials as to whether the refunding of bonds originally issued before the act became effective and not creating a debt or bonding it initially is permitted but not required. We need not decide the point in this case, for Magoffin County did choose to make application to the State officials for approval of their proposition and to subject itself to their authority.

KRS 66.310(2) provides:

''The State Local Finance Officer shall withhold his approval if he believes the financial condition and prospects of the county do not warrant a reasonable expectation that interest and principal maturities can be met when due without seriously restricting other expenditures of the county; if, in his discretion, the issue or reissue of bonds will not serve the best interests of both the county issuing same and a majority of its creditors; or if it appears that the bonds or the issuance thereof will be invalid.''

It is argued that the County Debt Act was not intended to substitute the judgment of the State officials

for the judgment of the fiscal court elected by the citizens of a county. Reliance is put on Fox v. Boyle County, 245 Ky. 27, 53 S. W. (2d) 192. The case involved the construction of two acts of 1932, Chapters 22 and 23, dealing with the issuance of county bonds and making judicial approval prerequisite of validity. We referred to the absence of power of the legislature to cut down or nullify the provisions of the Constitution respecting county financing. One of the acts, Chapter 23, was held unconstitutional and the other, now KRS 66.210 et seq., was construed as defining the power of the judicial courts not to extend to the invasion of discretionary powers of fiscal courts in relation to issuing renewal bonds or the terms thereof. The legislature in that act had not limited or restricted the fiscal courts in those respects. It has done so in the County Debt Act, under review here, and given supervisory authority to the State officials. As pointed out in Rentz v. Campbell County, 260 Ky. 242, 84 S. W. (2d) 44, sec. 144 of the Constitution merely creates the fiscal courts and does not define or prescribe their jurisdiction or powers. That is left to legislation. So it was held competent for the legislature to establish a commission to handle funds derived from the sale of bridge bonds instead of a fiscal court. In County Debt Commission v. Morgan County, supra, we held the County Debt Act to be constitutional, and regarded as untenable the ground that it supplanted the fiscal courts with the commission. The design of the statute is to assist counties whose financial affairs have become so involved that they have seemed to be beyond local solution and to afford state relief through the agency and in the manner prescribed. Another design is to curb deplorable practices due to inefficiency, carelessness, or in some instances, quasi criminality in the handling of county finances in utter disregard of the public welfare. Reference to these conditions is made in County Debt Commission v. Morgan County, supra, and in Fulton County Fiscal Court v. Southern Bell Tel. & Tel. Co., 285 Ky. 17, 146 S. W. (2d) 15, and in several other opinions. Another purpose is to protect investors in County bonds. The chaotic and almost hopeless condition of Magoffin County's finances is another evidence of the need for state assistance and supervision. While the debt is that of the taxpayers of the county, the condition, with its consequences, affect in some degree the entire body politic of the commonwealth. We are of opinion, there--

fore, that it was within the power of the legislature to confer upon the State Local Finance Officer and the County Debt Commission the authority contained in KRS 66.310(2) quoted above. It need scarcely be added that the power is not an arbitrary one. This is recognized by the provision for judicial review.

The statement of appeal filed with the record in the circuit court only asked for a reversal or vacation of the order of the County Debt Commission disapproving the issuance of bonds funding the floating debt and refunding outstanding bonds. There was no other statement of appeal or cross appeal filed. The argument of the appellants that the circuit court had no jurisdiction to adjudge that the two bond issues described had not been proved valid rests upon the proposition that there was no appeal to it from the finding and decision of the County Debt Commission that their validity had been established.

KRS 66.310 (4) provides that within a stipulated time after a decision of the County Debt Commission "any interested party or taxpayer of the county, upon filing bond for costs, may appeal to the Franklin circuit court or in the case only of bonds proposed to be issued for the purpose of funding floating indebtedness, to either the Franklin circuit court or to the circuit court of the county proposing to issue said bonds." The appeal is perfected by filing a record of the proceedings and decision. We are of opinion that when the prescribed procedure has been followed, the case is before the court in its entirety for a trial de novo, on the record made in the administrative proceeding. It extends to and embraces every question which legitimately arises on the record, the only limitation being that the courts are bound by the findings of fact of the Commission "if supported by any substantial evidence." 42 Am. Jur., Public Administrative Law, secs. 224, 226. The appeal is not like one from a judgment of a circuit court to the Court of Appeals but is like one taken from an inferior court to the circuit court, as prescribed by sec. 724, et seq., Civil Code of Practice, or more nearly like an appeal from an order of the Workmen's Compensation Board. KRS 342.285. In neither class of cases is the procedure technically or strictly an appeal but it is a method of obtaining a review of the entire proceedings in an inferior court or an initial judicial review of order

of an administrative bureau. The circuit court, therefore, had jurisdiction to consider the entire findings and decision of the County Debt Commission, and particularly to pass upon the validity of the bonds sought to be refunded. When applicable this statute provides a method of procuring a judicial review of the validity of a proposed bond issue alternative to that provided by KRS 66.210 which was originally an act of 1932.

But we are of opinion the judgment is erroneous that the finding of the Commission that the two bond issues described were validly issued is not supported by any evidence. The effect of the judgment was that they are invalid but upon other evidence there could be a later adjudication of validity. In the first place the bonds were issued long before the Act of 1932, KRS 66. 210, et seq., which reversed the presumption of validity of bonds. Until that enactment the burden was upon him who questioned validity to establish invalidity. Fox v. Boyle County, supra; Randolph v. Shelby County, 257 Ky. 297, 77 S. W. (2d) 961. The issue of 1916, of which only a $1,000 bond remains unsatisfied, had been recognized as good for 26 years, and the other issue of 1928, of which $15,000 of an original $35,000 remain unpaid, had been recognized as valid for 14 years. The orders of the fiscal court pertaining to their issuance declare them to be within constitutional limits. Of course an illegal indebtedness is not rendered valid by funding it nor by age or the running of years. Hogan v. Lee Fiscal Court, 235 Ky. 100, 29 S. W. (2d) 611. The question here, however, is not one of validation but of absence of proof of invalidity as the proper basis of the judgment. The bonds were presumed to be valid. Fulton County Fiscal Court v. Southern Bell Tel. & Tel. Co., 285 Ky. 17, 146 S. W. (2d) 15. Questions of unconstitutional impairment of contracts incident to the change in the statutes since their issuance, as well as questions of laches and limitations are raised. We pass those questions without consideration for there is the presumption of legality of the bonds inherent in their issue by reason of the condition of the law at that time. Ballard County v. Kentucky County Debt Commission, 290 Ky. 770, 162 S. W. (2d) 771. In short, there was no burden resting upon any one in this proceeding to establish the validity of those bonds and no one attempted to prove them invalid. Moreover, it appears that many of the records of Magoffin County upon which a deter-

mination of the question must of necessity have been rested have been destroyed and it was agreed by the parties before the Local Finance Officer that he might examine and consider the reports of the county's fiscal affairs on file in the office of the State Auditor of Public Accounts and not incorporate them in the record. The court, therefore, did not have all the evidence before it which had been considered by the Local Finance Officer. We think, therefore, that the court should have confirmed the finding and decision that all of the prior issues are valid.

This brings us finally to the kernel of the case. The Assistant Attorney General questions the motives of the bond company which has assisted the county officers in arranging for the re-financing of its debt and has an option of acquiring the old bonds and proposes to exchange them for the new ones. He submits that it is not right that the court should assist what he terms "speculators in the bond market" at the expense of the county. His designation and conclusion is apparently based upon the refusal of the president of the company, who testified in this case, to disclose his contracts and upon general knowledge that bonds of an impoverished county now in default are selling on the market for much less than par. We are concerned with merits and not motives. The administrative officers and the courts must be guided by the criteria primarily established in the statute as above quoted. KRS 66.310(2). Other than that relating to validity, one is the reasonable expectation of the county to meet the proposed obligations according to their terms. The other is even broader. It is whether the transaction will serve the best interests of both the county and a majority of its creditors. The two standards of guidance look to the interests and rights of the county, of the present creditors and of the prospective ones.

It may be again noted that the statute confines the courts on matters of fact to the findings of the County Debt Commission or Local Finance Officer if those findings are "supported by any substantial evidence." The legislature has deemed it wise to place this responsibility upon administrative officers as fact-finding tribunals, and it is well that it should be lodged initially with a trustworthy accountant and economist, experienced in that field of science. The courts continue to have the

power to exercise the judicial function of determining the quality of evidence, that is its competency and probative value. The decisions or conclusions of the Finance Officer and the Commission on those facts are open for full review.

Other than the ascertainment of the amount and kinds of debt outstanding, namely $42,000 principal of bonds, $10,000 defaulted interest, and $37,500 floating debt, a total of $89,500, the finding of fact, for which there was an abundance of evidence, may be thus stated: The assessment of property for taxation for several years has continually been at less than one-half its proper valuation and the rolls have been full of errors. Over a long period of years delinquencies and exonerations ran high thus indicating laxity and liberality inconsistent with a proper sense of obligation to other taxpayers and the county's creditors. Even in later years, under the budget system and strict statutory regulation, there have been large annual deficits. Money appropriated for the year next preceding that in which these proceedings were had had been exhausted within six months and it was estimated there would be a deficit of $1,500 in 1942, although the budget had been reduced and prepared with care upon estimates. In the previous year it was $2,500. The situation seems to be that the deficits have been permitted to occur in the payment of county officers' fees and salaries so that warrants issued therefor were for necessary governmental expenses and thereby made valid, whereas if they had been for other purposes they would not be. The course of fiscal management with previous deficits paid in part out of current revenues, absorbing much of them, with the accounting so inefficient and records so insufficient that the State Local Finance Officer was unable to separate governmental from non-governmental expenditures. We would not be understood as attributing the poor financial condition of the county to be due entirely to mismanagement throughout the past years, for everyone knows that during the years of depression, even in the best regulated financing of counties and individuals alike, there were unforeseen and unavoidable losses and miscalculations. Bondholders of all classes have been forced to accept losses, as it would appear those of Magoffin County will probably have to do.

Looking prospectively, it was found that $3,100

would be required annually to pay interest on and retire at maturity the principal of the proposed $52,000 bond issue. The amortization of a funding of the floating debt of $37,500 would require $2,200 more, so that were both series of bonds issued the total annual debt service requirement would be $5,300. It appeared to the budget commission of the county that it could provide only $3,500 for this purpose.

It was believed that the present officers of Magoffin County had evidenced a sincere desire and an honest intention to improve the financial management of the county by adequate and equitable assessments, hoping to increase the revenues by 50 percent. They promised to require the sheriff to make a reasonable effort to collect taxes by refusing indiscriminately to allow credit for land sales and other exonerations. On the other side of the ledger, they promised rigid economy and proper accounting. They had already introduced several economies, such as removing all but one telephone from county buildings, by which it was expected to save $850 a year.

The advantages inuring to the county by issuing the proposed bonds are, obviously, (1) a saving of 1½% and 2% annual interest, which would effect a considerable saving over the life of the bonds, and (2) having the entire debt extended over a long and definite period with annual payments thereon. But the county would have the same amount of debt to liquidate. It had not accumulated a sinking fund as required by the constitution and statutes or paid anything on the debt in recent years. It had gone merrily along and let the bondholders worry, all the time piling up its floating debt. Although there was an assuring promise and a few tokens of fulfillment, there was nothing tangible to show an ability to handle the new evidences of debt or that the county would not lapse into the same state of default and repose. At least the State Local Finance Officer doubted this ability to satisfy the new obligations. He declared that it must be shown, as it had not been, that the money would be forthcoming with which to meet the maturity of the new obligations. This is his opinion on this phase of the case:

"The State Local Finance Officer is of the opinion that, with efficient and honest financial administration, the County could, without seriously restricting its necessary governmental expenses, provide

the annual sums necessary to pay interest on and the principal of the $52,000 issue of 4 percent bonds,. and in addition to service the $37,500.00 issue proposed for funding the floating indebtedness. However, the State Local Fnance Officer does not consider the estimates of revenues and governmental expenditures based largely on guess-work and influenced to a large extent by hopes as to improvement in financial administration will warrant a reasonable expectation that the bonds proposed to be issued will be paid according to their terms."

The deferment by the county of its purpose to fund the floating debt, it seems to us, was not only unwise (although that is not within the sphere of judicial consideration) but was discriminatory of the rights of the holders of $37,500 in county warrants. One of the conditions for the approval of bond issues is the interest of a "majority of its creditors." This measurement cannot be regarded as a strictly mathematical formula. The amount of the floating debt, although not more than one-half of the total, is indeed a substantial part. Perhaps the number of individuals holding the warrants are more numerous than the holders of the bonds. It is to be observed, however, that the statute reads that approval shall be withheld if the Local Finance Officer be of opinion that the issuance of bonds will not serve both the county and a majority of its creditors. Refunding the bonds and leaving this large floating debt unprovided for is discriminating against the holders of the county warrants. And we quite agree with the Finance Officer and the County Debt Commission that it is not to the best interests of the county, for it would leave it to continue to roll up, probably at compound interest.

The exercise of the discretion lodged in the administrative officers of the state is entitled to considerable weight. In view of the factual situations described and the deductions related, we think the circuit court properly refused to vacate the decision of the Local Finance Officer and the County Debt Commission, which consists of the Governor and other high State officers, not to approve the plan of re-financing.

The decision has not closed the doors to Magoffin County permanently. It may at any time re-enter and seek the approval of bonds to re-finance all its obligations.

The judgment is affirmed except that part which declares the two bond issues described had not been proved valid.

Whole Court sitting.