## Board of Council of the City of Winchester v. Board of Education of the City of Winchester.

(Decided October 25, 1916.)

### Appeal from Clark Circuit Court.

1. Schools and School Districts—Taxes—Cities of Fourth Class.— The meaning of section 3595, Kentucky Statutes, requiring the board of education of cities of the fourth class to make within thirty days of the levy of a tax for school purposes a report to its board of council giving an estimate of the expense of maintaining the common schools for the current fiscal year and "the estimated amount to be received from the common school fund of the State, interest on bonds, endowments et cetera," is that the board of education shall report all funds, whether endowments, interest on bonds, cash on hand or other thing available, on hand or derivable from sources other than the levy to be made, that may be applied to the maintenance of the schools for the year covered by the report; and the board of education is not authorized to omit from its report money it may have in its treasury, though that money be a balance such as it had been accustomed to carry over from year to year.

2. Schools and School Districts—Taxes—Cities of Fourth Class.— Where, in an action by the board of education of a city of the fourth class against its board of council to compel an additional tax levy for common school purposes, it is made to appear that the board of education has on hand a cash balance, after paying all expenses of maintaining the schools of the city for the previous year, and such cash balance, together with the amount to be received from the common school fund of the State and the amount that will be realized from a tax levy already made by the board of council, is substantially equal, in the aggregate, to the estimated cost of maintaining the city's common schools for the current fiscal year, as reported by the board of education to the board of common council, mandamus will not lie to compel the additional tax levy demanded by the former of the latter.

3. Schools and School Districts—Taxes—Duty of Board of Education. —The fact that money is not available from the tax levy until November, and schools begin in September, does not authorize the board of education of a city of the fourth class to carry over

each year a balance from the previous year to pay teachers, etc., for the months of September and October, or to omit this balance from its report to the board of council of available resources.

4. Schools and School Districts—Taxation—Board of Education.—Where the amount to be realized by a levy for school purposes falls only $9.83 short of the amount necessary, according to the estimate of the board of education, to meet, with other funds it had available, the expenses of maintaining the schools for the current year, no additional levy to make up such a small difference will be authorized, especially since the estimate of expenses was only approximate.

J. M. STEVENSON for appellant.

S. T. DAVIS and J. M. BENTON for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The Board of Council of the city of Winchester prosecutes this appeal from a judgment of the Clark circuit court compelling it by a writ of mandamus, awarded at the suit of the Board of Education of the city of Winchester, to amend the tax levy made in July, 1916, for school purposes, by increasing it from 40 cents, as then fixed, to 48½ cents on each hundred dollars of taxable property in the city of Winchester.

As the total assessed value of all property in the city subject to taxation for the year 1916 is $5,793,480.00, the levy of 48½ cents ordered by the judgment of the circuit court for school purposes would produce for the year 1916 a fund of $28,967.40, whereas the levy of 40 cents that was actually made in July, would make only $23,173.92. Winchester is a city of the fourth class, and section 3595, Kentucky Statutes, imposes upon the board of education of a city of the fourth class the duty of annually reporting to the board of council of the city within thirty days prior to the time prescribed for the levy, not only an estimate of the expenses of maintaining the public schools of the city for the current fiscal year, but also to report all of its resources. The difference between the estimated total of expenses and the total of the resources is the amount for which the board of council is required to make a levy. It appears from the record before us that the board of education, on the 7th day of July, 1916, made to the board of council of the city of Winchester the following report:

"To the Board of Council of the City of Winchester, Ky. Gentlemen: We, the duly elected officers of the

Board of Education of the city of Winchester, and as such acting for said Board, as directed by the law of the State of Kentucky, make the following approximation of the amount of money necessary to defray the expenses of maintaining the schools of the City for the coming year:

| | |
|---|---:|
| Superintendent's, teachers' and other salaries | $30,000.00 |
| Repairs to buildings | 1,500.00 |
| Furniture and apparatus | 1,000.00 |
| Fuel and lights | 1,000.00 |
| Stationery and printing | 350.00 |
| Insurance | 500.00 |
| Books, library, etc. | 250.00 |
| General expenses | 2,000.00 |
| New buildings | 2,000.00 |
| Making a total of | $38,600.00 |
| Of this sum we will receive from the State, etc., about | $10,000.00 |
| Leaving the City's part | 28,600.00 |

"We respectfully request that the Board of Council make the necessary levy, and collect the tax to cover these necessary expenses, if necessary up to the legal limit.

"Respectfully submitted,
"C. H. REES,
"President of the Board of Education.
"W. O. PARRISH,
"Secretary of the Board of Education."

It will be observed that the above report fails to state whether the board of education had any endowments, bonds, money or other resources available for use in defraying the expenses of the common schools of the city of Winchester for the current fiscal year. It is, however, alleged in the petition that the board of education has no bonds upon which it will receive any interest, no endowments or other investments from which it will derive any profit or income, and that such a tax levy by the board of council of the city upon the taxable property therein should be made as would produce the sum of $28,600.00, which, with the $10,000.00 paid by the State, would meet all expenses necessary for the maintenance of the public schools for the current fiscal year.

Following the making of the report the board of council made the tax levy but disregarded the request of the board of education that it be fixed at such a rate as would produce $28,600.00, which would have required about 48½ cents on each hundred dollars' worth of property, and made, as previously stated, a levy of 40 cents, which will produce for school purposes for the year a fund of $23,173.92. This levy is attempted to be justified in the answer of the board of council upon the ground that the board of education had in the hands of its treasurer at the time of making the report, after payment of all expenses for the maintenance of the schools for the previous year, a surplus of $6,000.00, which is available for the maintenance of the schools for the present fiscal year, and together with the $23,173.92 to be produced by the levy of 40 cents actually made by the board of council, would make an amount somewhat in excess of the $28,600.00, exclusive of the $10,000.00 to be paid by the State, required for the maintenance of the schools for the year.

The reply to the answer denies that the board of education had on hand a surplus of $6,000.00, but admits that it had in its treasury, available for the present fiscal year, the sum of $5,416.25, and alleges that as the revenue that will be derived from city taxes for the present year will not be available until about November 1st and the public schools begin early in the month of September, the $5,416.25 already in the treasury of the school board will be required for paying teachers' salaries and other expenses of maintaining the schools during the months of September and October.

The single question to be determined on the appeal is, should the $5,416.25 surplus left in the hands of the board of education of Winchester after defraying all of the expenses of maintaining the common schools for the previous year, be included as a part of the amount of $38,600.00 its reported estimate shows will be required to pay all expenses of maintaining the schools for the current or present fiscal year? If it be decided that this question should be given an affirmative answer it would necessarily follow that the appellant board of council committed no error in limiting the tax levy to the 40 cents fixed by it, as the amount thereby realized for school purposes would, with the $5,416.25 in the hands of the board of education and the $10,000.00 to be

paid by the State, make the total amount of $38,600.00 required for meeting all expenses of maintaining the schools of the city for the current fiscal year. In other words, the situation presented by the record is simply this: It will require $38,600.00, the amount shown by the estimate reported by the board of education, to defray the expenses of maintaining the schools of the city for this year. If, as admitted by the board of education, $10,000.00 of this amount will be received from the school fund of the State and it has on hand, as also admitted, the further sum of $5,416.25, these two sums with the $23,183.75 that will be realized from the levy of 40 cents on each hundred dollars' worth of property in the city, would substantially reach the amount required.

The board of education seems to take the position that it was not compelled to report any cash which it may have had in its treasury, and that the board of council in making the required levy had no legal right to take into consideration the amount of cash on hand and available for the present school year. We do not concur in either of these conclusions. The duty required of each of these boards is defined by section 3595, Kentucky Statutes, which provides:

"Said board (board of education) shall, within thirty days prior to the time prescribed for the levy to be made in the charter of cities of the fourth class, approximately ascertain the amount of money necessary to be used to defray the expenses of maintaining the schools, improving or constructing buildings, *et cetera*, thereof, and any liquidation of the liabilities during the current fiscal year, and report the same, together with the estimated amount to be received from the common school fund of the State, interest on bonds, endowments, *et cetera*, to the city auditor or clerk, who shall thereupon report the same to the city council, and the said city council shall make the necessary levy, and collect the tax to provide suitable school buildings, and to defray the general expenses necessary for school purposes: *Provided,* That the levy for any one year shall not exceed that fixed by law on each $100 of value of taxable property in the city, as returned by the board of equalization. Said tax shall be paid to the board or authorized agent of same, as fast as collected."

Manifestly the meaning of the statute is that the board of education shall report to the board of council,

not only the estimate expenses and the amount to be received from the State, but also report all funds, whether it be endowment, interest on bonds, money or other thing available, on hand or derivable from sources other than the levy, that may be applied to the maintenance of the common schools for the year in which the report is made. It did not comply with this duty in the report made by it July 1, 1916, for the report omits any mention of the $5,416.25 which the reply admits it then had on hand. No objection is here made by the appellant board of council to any of the items of expense included in the estimate shown by the report of the board of education, or to any of the objects to which the expenditures are to be devoted, but its only contention is that the board of education is bound by its estimate and that it has no right to demand that the board of council shall make a levy which, together with other funds available to the board of education, will amount to more than $38,600.00.

The taxpayers of the city have certain rights which neither the board of education nor the board of council can ignore, and it would be unjust to compel them to pay in taxes the sum of $5,416.25 when the board of education already has it in hand, and which sum, together with the $10,000.00 to be received from the State, and the $23,183.75 which would be realized under the levy of 40 cents made, will, according to its own estimate, suffice for the maintenance of the common schools for the present year.

In thus holding it is not our purpose to abandon the rule declared in Board of Education, etc. v. Townsend, Mayor, et al., 140 Ky. 248; Fiscal Court of Logan Co., et al. v. Board of Education of Logan County, 127 S. W. 527, and perhaps other cases, that the legislature, by placing the public schools of cities in the hands of boards of education did not mean that either the city, the board of council or the courts should control them, but it meant to make the boards of education entirely independent, and also make it the duty of the council to levy a tax sufficient to meet the board's demands, not to exceed the limits prescribed by law. But while this is true, the board of education cannot complain that the board of council, in fixing the tax levy for school purposes, does not exceed its own estimate of the amount required.

The conclusion here expressed is sustained by the opinion in the case of the Board of Education of New-

port v. City of Newport, 171 Ky. 234. In that case, following a report from the board of education which estimated the necessary expense of maintaining the public schools for the year 1916 at $122,750.00 and stated that its revenue from other sources than city taxes was $54,-979.85, leaving a balance of $67,770.14 to be raised by the city of Newport, the board of commissioners of the city of Newport levied for the year 1916 a school tax of 37 cents on each hundred dollars of taxable property, which levy, if collected, would produce the sum of $62,-039.57, or $5,730.57 less than the sum requested by the board. Suit was brought for a mandamus to require the board of commissioners to levy an additional tax sufficient to supply the deficit. After suit was filed the commissioners amended their apportionment ordinance and, in addition to the levy previously made, apportioned to the school fund "the amount to be collected from delinquent taxes, which would be approximately $5,868.94." The board of commissioners made defense to the action on the ground that the board of education "in estimating its resources had failed to take into consideration the amount of $5,868.94 to be received from delinquent taxes, and that this sum, added to the amount of $62,039.57 would aggregate $67,908.51, or a sum in excess of that requested by the board of education." In its reply the board of education admitted that it would receive $5,868.94 from the delinquent taxes, but averred that it had included in its estimates for the year in question $4,743.67 as delinquent taxes. It also averred that the levy of 37 cents made by the board of commissioners would not produce more than $55,835.62 and together with the estimated delinquent taxes for the year in question would not raise more than $61,704.56; and further that it did not include in its estimated revenues the delinquent taxes to be collected on levies prior to the year 1914, as only a small amount would be realized from that source. The mandamus was refused. In the opinion it is said:

"While it is the duty of the board of commissioners to levy a tax sufficient to produce the amount requested by the board of education for the maintenance of the public schools, yet the board of commissioners has the right to insist that the board of education, in estimating the amount required to be raised by the city, shall take into consideration its estimated revenue from other

sources. Here the board of education admits that it will receive from delinquent taxes the sum of $5,868.94. It is true that the court below proceeded on the theory that this sum was to be derived from taxes other than school taxes, but the record does not bear out this assumption. Of course, the board of commissioners cannot discharge its obligations to the board of education by merely turning over to the board taxes which have already been levied for school purposes. As before stated, however, it may insist that these delinquent taxes shall be estimated among the resources of the board of education. The board of education claims that it did take into consideration the fact that it would receive from delinquent taxes the sum of $4,743.67. We fail, however, to find in the record any satisfactory evidence of this fact. Of course, a mandamus will not be granted unless a clear legal right thereto has been shown, and in the absence of a statement or clear evidence of the precise items that were embraced in the board's estimate of its resources other than the amount to be received from the levy to be made by the board of commissioners, we shall not assume that delinquent taxes were embraced in its estimated resources.''

The instant case furnishes a stronger reason for refusing the writ of mandamus than was shown in the case, *supra,* for in the latter case the delinquent taxes which it was held should constitute a part of the resources in estimating the amount required by a tax levy for the maintenance of the schools, had not at the time the report was made been actually received by the board of education; whereas here the $5,416.25 which the board of council insists shall be estimated as a part of the resources of the board of education was at the time its report was made, actually in the hands of its treasurer.

The reason given by way of argument in the reply for appellees' failure to report the cash balance of $5,416.25 in its treasury as a part of the resources available for the maintenance of the public schools, is that it should not be so included because it has been its custom to carry over such balances from year to year in order to pay the teachers and provide fuel for the school buildings for the two months of September and October intervening between the beginning of the term and the date, November 1st, when the collection of city taxes can be enforced. This contention may be sufficiently

answered by saying that no authority seems to be contained in the statute for such a custom; and if, in the absence of the custom, the teachers would in fact be delayed in the payment of their salaries for the brief time indicated, it is a misfortune to prevent which the law makes no provision. If the argument is sound, for the same reason here urged the State of Kentucky should carry over a large balance from one fiscal year into the next, to be used in paying the salaries of its teachers in July, instead of compelling them to wait until October or November, when sufficient taxes are collected to provide their payment. It is, however, a well known fact that a great number of teachers of the rural common schools throughout the State begin their work in July, yet are not paid their salaries until three or four months later.

By the statement previously made in the opinion, that the amount realized from the levy made by the council of 40 cents on each hundred dollars of taxable property of the city, together with the $5,416.25 in the treasury of the board of education and the $10,000.00 paid by the State, will "substantially reach" the amount required by the board of education, viz.: $38,600.00, it was meant that it will come within $9.83 of doing so; and as the amount requested by the report of the board of education is only an approximate estimate, it may not be consumed by the total expenditures when actually made. At any rate, the small deficit of $9.83, should there be such deficit, would not authorize an increase in the levy already made by the board of council, or the granting by the court of a mandamus to compel such action on its part. On the contrary, the maxim *De minimus non curat lex* would more properly apply.

For the reasons indicated the judgment is reversed and cause remanded, with directions to the circuit court to refuse the writ of mandamus prayed and dismiss the petition.