# Chestnut v. City of Bowling Green.

March 21, 1941.

William H. Crutcher, Jr., for appellant.

Charles R. Bell for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

By these proceedings the City of Bowling Green sought judicial approval of a bond issue to cover a floating indebtedness of approximately $80,000, including interest, accumulated over a period of years.

According to the testimony Mr. C. D. Carter, a member of the accounting firm of Short & Connelly, a deficit of $32,648.74 existed as of May 1, 1930, occasioned largely by a judgment rendered against the City in favor of Potter-Matlack Trust Company for $82,260.75, of which, $54,000 was paid with the proceeds of a bond issue. The deficit was carried over into the ensuing fiscal year, and from that time on each year's revenue was applied to the preceding year's accumulated indebtedness. The amount of the deficit varied annually, but

apparently received its greatest impetus during the period between December 16, 1938, the date on which the decision of this court in the case of Payne v. City of Covington, 276 Ky. 380, 123 S. W. (2d) 1045, 122 A. L. R. 321, was rendered, and December 4, 1939, the date on which the present city officials took office. On the former date, the floating indebtedness was $36,387.35, and on May 31, 1940, it amounted to $72,615.49, of which $31,250 was represented by notes for money borrowed to pay the necessary operating expenses of the city government. Never during the entire period referred to did the City levy the maximum tax rate permitted by the Constitution; and it is argued that since, if it had done so, the amount received by it would have exceeded the present floating indebtedness, the City is entitled, under the rule prevailing prior to the decision of the Payne case, supra, to treat the entire indebtedness sought to be bonded, as validly incurred under the limitations prescribed by Section 157 of the Constitution.

It is true that under the rule prevailing prior to the decision of the Payne case, supra, all indebtedness which did not exceed the amount which the City might have collected had it levied the maximum permitted tax for the year during which it was incurred was considered valid, but the opinion in that case abrogated that interpretation and announced that thereafter any indebtedness incurred in any year in excess of the amount actually derivable from the tax actually imposed was invalid. Accordingly, the appellee cannot issue bonds to cover that portion of the floating indebtedness incurred for other than necessary governmental expenditures, after January 16, 1939, the effective date of that decision, notwithstanding the fact that during the prior years in which the expenditures exceeded its actual resources, it might lawfully have created a much larger indebtedness.

However, since the amount of the floating indebtedness accumulated prior to December 16, 1938, was substantially less than the surplus which the City could have collected during the same period under maximum tax rates, that indebtedness was not incurred in violation of Section 157 of the Constitution as then interpreted; and since the issuance of even a larger amount of bonds would not increase the City's total bonded indebtedness beyond the maximum authorized by Section

158, we perceive no reason why bonds to the amount of $36,387.35, the amount of the floating indebtedness on December 16, 1938, may not be issued. Indeed, since the City's fiscal year begins on June 1st, and it was expressly provided in the opinion in the Payne case, supra, that the rule therein announced should not apply to any transaction begun before the decision became final, no reason is apparent why the City may not be authorized to issue bonds for the amount of its floating indebtedness as of January 16, 1939, plus the amount by which the expenditures during the remainder of the fiscal year for necessary governmental purposes exceeded its revenue available during that period. This is true because on January 16, 1939, it was beyond the power of the City to increase its income for the balance of the fiscal year or to decrease its expenditures or obligations incurred for necessary governmental activities. As the record now stands it is impossible to determine the amount of the floating indebtedness as of January 16, 1939, or the receipts or disbursements for the remainder of the fiscal year; but this deficiency may be supplied by further pleading and proof.

There is an additional reason why no part of the indebtedness incurred subsequent to May 31, 1939, may be bonded, namely: In incurring it, the city officials did not display due regard for the finances of the City. Kentucky Statutes, Section 186c-7. Not only did they fail to levy the maximum tax rate, but they apparently incurred indebtedness for permissive, as distinguished from necessary, governmental purposes. This is not to be construed as invalidating the notes for money borrowed to carry on the necessary and essential functions of government subsequent to May 31, 1939, as the testimony indicates that the indebtedness represented thereby was necessarily incurred in order that the City might continue to operate.

It follows that to the extent that it authorized the issuance of refunding bonds in an amount in excess of $36,387.35, the judgment appealed from is erroneous.

Judgment reversed for further proceedings consistent with this opinion.