## Stith v. Board of Education of Pendleton County School District.

March 9, 1943.

H. B. Best for appellant.

Alfred Holman for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

Prior to 1939, the Pendleton County Board of Education had conveyed certain of its school properties to a holding company, known as the Pendleton County School Corporation. The Corporation issued bonds in the amount of $210,000. In 1939, the McKinneysburg school, one of those held by the Corporation, burned. It required some $65,000 to replace the building. Since there was only $15,000 insurance on it, there arose the question as to how the remainder of the cost should be financed. It is asserted in the record before us, as was done in Stith v. Board of Education of Pendleton County School District, 292 Ky. 91, 166 S. W. (2d) 58, 59, that the Corporation was unable to issue additional bonds to finance the building of the McKinneysburg school. Under that state of affairs the Board of Education entered the picture and made possible the raising of some $53,000 by becoming the guarantor or surety for the Corporation. In the Stith case, supra, we refused to approve the funding of that indebtedness. In that opinion we said:

"* * * In these circumstances we do not think the board of education had the right to incur an indebtedness at the expense of the taxpayers to reconstruct the building, which admittedly was the duty and obligation of the corporation. And, furthermore, if it should be conceded that the board had the right, if it so desired, to reconstruct the building for the benefit of the school, yet it had no right to create a bonded indebtedness for the purpose of raising funds to loan to the corporation, to discharge its duty and obligation, conceding that such was a loan, as admitted by appellee. The statute authorized a school board to issue funding bonds pertaining to school purposes but we do not think that it was in the minds of the Legislature when enacting the statute to authorize any district taxing authorities to float a bonded indebtedness to create

or raise funds to loan to another, although the school board might be indirectly interested in the matter or probably become the beneficiaries of the funds at some future time. We conclude, therefore, that the board of education has no authority to issue the funding bonds proposed by its resolution.''

Now we are being asked by the Board to approve the funding of $35,000 of its alleged outstanding indebtedness of $53,000. The Board asserts ·that it owes $10,210.85 to its teachers and other employees; that it owes the Falmouth Deposit Bank $12,000, which it borrowed July 6, 1942, in anticipation of its revenues for the school year which began July 1, 1942, and ends June 30, 1943; and that there remains an unpaid balance of $12,938.36 of a $16,000 note due the Falmouth Deposit Bank upon which the Board became the guarantor for the Corporation in April, 1940, and for the payment of which the Board mortgaged all of its school buses. The Board seeks to fund $35,000 of this alleged indebtedness of $35,149.21.

There are allegations and proof that the Bank has threatened to sue the Board if the amounts due it are not paid, and also that the teachers and other employees whose salaries are in arrears are threatening to leave the employ of the Board if they are not paid. While there is some indication that the salaries in arrears extend over a period of years, the schedule setting forth the amounts due bears no date whatever. There is also the contention that this salary deficiency was brought about through tax delinquencies and interest thereon extending from 1934 to 1941 in the amount of $10,500. This contention would make it appear that the Board has been having financial difficulties since 1934; but the testimony of the county superintendent on the question as to when the Board became involved financially seems to indicate otherwise. This testimony follows:

''Q. 16 Did your Board in any of the years 1934 through the fiscal year 1941-42 exceed, by way of contracts, the revenues lawfully accruing to the Board of any of such years? A. As far as I have been able to discover, the only year, or years, in which the Board did exceed those lawful revenues were in 1940-41 when the necessity arose for reconstructing the McKinneysburg Junior High School

building. We contracted to restore that building on the theory, and with the knowledge, that it was not an obligation of the Pendleton County Board of Education, but of the Pendleton County Public School Corporation; and which, undoubtedly, it was and is; besides the title to all of those six (6) high school buildings, including the McKinneysburg structure, accrues to the Board of Education of the Pendleton County School District at the time the bonds issued by the private corporation are liquidated, which is done out of annual rentals paid by the Board. By those outlays, we supposed that we might have the lawful right to advance those funds, as we did; although in doing so, we did neglect to pay the costs of governmental operation to the extent of the $35,000 indebtedness we now seek to fund."

It would appear from the foregoing quotation from the record that the Board is attempting to do indirectly what we said it could not do directly; namely, refinance a part of the indebtedness incurred by it in advancing money to the Corporation for the reconstruction of the McKinneysburg building.

That the Board is in serious financial straits is beyond question; but KRS 66.210 and KRS 66.220 authorize the funding of only a valid indebtedness. See Meade v. Board of Education of Johnson County, 268 Ky. 71, 103 S. W. (2d) 701. The statutes require both allegation and proof as to the validity of the debt to be funded. For all the record before us shows, the amounts now due teachers may be for the current school year. As indicated from the county superintendent's testimony, the Board did not exceed its revenues until 1941-42. Tax delinquencies, however large, could not be funded if the Board was still able to live within its revenues and its budget during the period they were experienced.

The $12,000 borrowed from the Bank on July 6, 1942, was in anticipation of the present school year's revenues. The Bank has a lien on those revenues for the payment of that debt. Whether the revenues will be sufficient to meet the current year's budget, which would include the retirement of this item of indebtedness, can in no sense be determined until the expiration of the present school year.

540

The other item of $12,938.36, which makes up the balance of the $35,000 which the Board is seeking to fund, represents the balance of a $16,000 note which the Board signed in order that the Corporation might get money with which to construct the McKinneysburg building. The foregoing quotation from Stith v. Board of Education of Pendleton County School District, supra, puts to rest the question of whether or not the Board may fund this item of indebtedness. In that case we said that the Board had no right to incur such an indebtedness, and that it could not be funded.

It follows from what has been said that the judgment should be and it is reversed, with directions to set it aside and for the entry of a judgment in conformity with this opinion.