## Swinburne v. City of Newport.

June 20, 1944.

822

Thomas D. Hirschfeld for appellant.

Carl H. Ebert for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

This appeal is from a judgment approving the issue of $43,000 of bonds to fund a floating debt of the City of Newport, created by deficits in the revenue during the fiscal years of 1941, 1942 and 1943.

For the fiscal year 1941, it was estimated that the revenue of the City from all sources would be $717,921.85 and the anticipated expenditures equal to that sum. When the year had closed it was found that the actual collections were only $672,163.47, while the actual expenditures were $709,909.46, thus there was a deficit of $37,745.99. The tax rate levied for other than sinking fund on voted bonds was $1.455 instead of the maximum of $1.50 permitted by the constitution.

The deficit was ignored in the budget and computations for the fiscal year 1942. It was estimated that the income to be received that year would be $705,942.69 and the budget, disregarding the deficit of the previous year, was fixed at the same sum. The tax rate, excluding sinking fund requirements, was $1.268. At the end of the year it developed that the actual collections had been $686,218.07 and the expenditures $690,871.30. Thus there was a deficit for that year's operations of $4,652.60.

Both of these deficits were ignored in preparing the budget for the year 1943. The anticipated revenue and expenditures were estimated at $693,840. The tax rate was $1.44. The actual collections were $678,104.28 and the expenditures $678,543.67, a deficit of $439.39.

It is the aggregate of these three deficits for which the bonds are proposed to be issued. Although the deficit occurring in 1941 is very large, more than 5% of the estimated revenue, which itself had been placed at a higher figure than the law authorized, we are not prepared to say that it should not have been treated as a "casual deficit," inasmuch as the testimony 'is to the effect that considerable revenue was lost by reason of

the inability to collect taxes on property damaged or affected by floods, and the actual expenditures were about 10% less than the anticipated expenditures. The term "casual deficit" used in the Constitution (sec. 49) is synonymous with "failures in the revenue." State Budget Commission v. Lebus, 244 Ky. 700, 51 S. W. 2d 965, 969. But it can mean only a deficit arising without design or without being foreseen or expected. Webster's New International Dictionary. The deficits in the other years are not so large as to excite suspicion of an unreasonable over-estimate.

As pointed out in Fulton County Fiscal Court v. Southern Bell Telephone & Telegraph Company, 285 Ky. 17, op. cit. 28, 30, 146 S. W. 2d 15, op. cit. 21, 22, Sec. 157 of the Constitution, which establishes the limitations upon current indebtedness, was first construed to require a deficit to be carried over into the succeeding year as an obligation for that year, but that that construction had been departed from. Then came the revolutionary opinion of Payne v. City of Covington, 276 Ky. 380, 123 S. W. 2d 1045, 122 A. L. R. 321. The question as to what should be done with casual deficits was left open in the Fulton County case because the conditions dealt with arose before the decision in the Covington case and our opinions on this matter had not been altogether consistent even under that previous conception. We have subsequently held, however, that a casual deficit which had occurred although there had been a good faith anticipation and reasonable estimates of both revenues and expenditures is not illegal or invalid, but that it should be carried over as an obligation to be paid during the following year. City of Paducah v. Board of Education of Paducah, 289 Ky. 284, 158 S. W. 2d 615; Blancett v. Leet, 297 Ky. 141, 179 S. W. 2d 223. Therefore, each of these three deficits should have been and must now be deemed to have been carried over into the succeeding year. When that shall have been done, it is disclosed that in each of those years the anticipated or properly budgeted expenditures exceeded the estimated revenues.

The City justifies its action in not doing so by regarding the strict letter of the statutes, KRS 89.630, 89.640, relating to the preparation of an annual budget. The statutes speak of current revenues and current expenditures. We cannot construe them as being confined

only to the expenditures of the particular year. They must be read in the light of the constitution and other statutes and of the interpretative decisions of this court. It is implicit in the terms of the statute authorizing the issuance of funding bonds by a city of the second class. It requires that before such bonds shall issue or be offered for sale, the issuance must be approved by the courts and that such approval shall be withheld unless it be proved, among things, that the action of the officials at the time the indebtedness was created had "due regard for the finances of the * * * city." KRS 66.210, 66.220. So long as the officials of a municipality or other taxing district do not levy the maximum tax authorized by the constitution and statutes and do not exhaust other reasonable and lawful sources of current revenue, or reduce expenditures to conform to income, it cannot be said that they have had "due regard for the finances" of the district. Cf. Stith v. Board of Education, 293 Ky. 536, 169 S. W. 2d 600. It is, therefore, no more lawful than it is moral for them to impose upon the revenues of future years, and often upon another generation of taxpayers, burdens and obligations which should have been and should be currently paid, the resources being available with which to pay them approximately as created. If the City of Newport had levied the necessary rate of taxation in any one of the three years, there would have been no deficit. Although there was, as we have pointed out, a deficit in the 1941 operations of more than 5% of the exaggerated estimated income, the tax rate for 1942 was reduced to $1.268. This was a reduction of 18 7/10 cents, or of nearly 13% from the previous year.

Section 159 of the Constitution declares that when any city or other taxing district is authorized to contract an indebtedness, it shall at the same time provide for the collection of an annual tax sufficient to pay same. That mandate has particular reference to bonds, but the spirit of the provision applies to all contracts creating a liability. A lawful deficit may be represented, as it is here, by a note to a bank and it is certainly an indebtedness. It is just as certain that if the maximum tax rate and the full extent of the revenue resources are not levied and exhausted, the duty devolves upon the officials to provide for the liquidation of that debt as it does for one which has been bonded. When that duty has not been performed and the current revenue

resources not exhausted, the debt should not receive the approval and sanction of the courts. Cf. Chestnut v. Bowling Green, 285 Ky. 800, 149 S. W. 2d 523.

We are constrained to note the excessive and unwarranted estimates of the revenues. While it is testified generally that regard was had for anticipated delinquencies in the collection of the taxes, no figures are given and no ready basis afforded for computations of our own which would disclose to what extent that was done. On the face of the financial statements, there was an anticipation of 100% tax collections plus additions for anticipated collections of back taxes, the amounts for the three years being approximately $32,000, $37,000 and $30,000, respectively. These were apparent duplications. See Coffman v. Central City, 267 Ky. 26, 101 S. W. 2d 204; Fulton County Fiscal Court v. Southern Bell Telephone & Telegraph Company, 285 Ky. 17, 146 S. W. 2d 15. Of course, if due allowance be made in the estimates for a possible failure to collect 100% of the current taxes, it is proper to include the anticipated collections of delinquencies, based upon experience and a reasonable regard for prospective economic conditions. And although the budget listed such minor items of revenue as from "Day nursery," $150, $125 and $200, respectively, there was added, "Miscellaneous," $10,000, $3,000, and $3,300, respectively. The actual receipts credited to the item "Miscellaneous" were $1,884.02, $4,135.58, and $2,055, respectively. In Coffman v. Central City, supra, we held that because of their nature, uncertainty and indefiniteness, "Fines" and "Miscellaneous receipts" should not be included in any estimate of revenues to be collected in the future, but that when such items had ceased to be speculative and the money from those sources had been actually received into the treasury, they may be considered retroactively.

We are of opinion that the circuit court should have refused to approve the issuance of bonds.

The judgment is reversed.

Whole Court sitting.