## City of Middlesboro et al. v. Board of Education of Middlesboro.

June 21, 1946.

684

Herbert F. White and Hiram H. Owens for appellants.

Robert J. Watson for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

The Board of Education of Middlesboro obtained a writ of mandamus directing the city's council to levy a tax for school purposes for the ensuing school year, based on the rate fixed in the budget, $1.76 on each $100 value of taxable property in the district. It was contended below, and so here: (1) that appellee did not use the correct assessed valuation of taxable property, including franchise valuations, as basis for the fixed rate; (2) that certain items of resources were omitted, a surplus of $2,000, and estimated delinquent taxes.

Appellant contends that a levy based on a rate of $1.55, or less, will produce the necessary amount required. Since there is no question as to the correctness of estimated expenditures set up, we are to consider only the question of the proper rate. Testimony of the city clerk and assessor fairly establish the current valuation of assessible property in the district to be a sum considerably greater than that arbitrarily set up by appellee. This testimony is substantially admitted by the school superintendent, who said in preparing the budget he had used 1944 property and franchise valuations. The valuation fixed in the budget is around a half million dollars less than the apparently correct valuation for the current year (tangible and franchise), consequently the levy should be fixed on a rate to be computed on the most reliable valuation; this, as shown, is $4,526,545, tangible property, and $834,636 franchise valuations. That these figures may not have been properly set up in the budget may be due to the fact that they were not known to appellee when it prepared its budget, but as they are seemingly correct, they should be accepted as basis, and the result would be a rate proportionately lower. Such reduction in rate to the extent indicated would be just and legal. In City of Paducah et al. v Board of Education, 289 Ky. 284, 158 S. W. 2d 615, and

Breathitt County Fiscal Court v. Breathitt County B. of E., 191 Ky. 437, 230 S. W. 914, we held that the levying authority was under no legal duty to adopt a rate which would produce more revenue than necessary to meet expenditures as set up in its budget.

We take up next the failure to include in the budget the item of available assets and anticipated revenues. The Superintendent showed familiarity with the facts and figures upon which he based the budget, and in testifying explained it in detail. It appeared that the amount estimated to accrue from collection of delinquent taxes was not embraced in the budget. The clerk and assessor testified that the Board had received in the last year $4,850 from this source; that a fair estimate for the current year, based on previous years' experiences, would be $4,000. The city is insisting that it is correct in its demand that the Board include in its budget request this item, and the omitted surplus, basing its contention on Board of Education of Newport v. City of Newport, 171 Ky. 234, 188 S. W. 360, and Board of Council of City of Winchester v. Board of Education of City of Winchester, 171 Ky. 692, 188 S. W. 755. In these cases we were dealing with statutes relating to school purpose taxation in cities of two classes. Since these cases were written, the law with respect to school budgeting has been changed. Under Sec. 156.160(10), KRS, the State Board of Education is required to and does furnish to each school district rules governing the preparation of budgets. This, Form F-1, provides under estimated receipts a report of what the Board expected to have as cash balance as of July 1, and a statement of all other revenue sources not included in specific source items, property, franchises, bank shares, and poll taxes. This it seems would require a statement of estimated anticipated collections of delinquencies. The record contains what purports to be a budget approved by the State Board, but as shown in the record the two items mentioned are not included.

In City of Paducah v. Board of Education, 289 Ky. 284, 158 S. W. 2d 615, we quoted from and followed Board of Education v. City of Newport, supra, and in passing on the question as to whether the Board should fix its estimate of anticipated revenue based on experience in collecting taxes, and deduct the estimated amount not collected within the fiscal year, or whether it must

base estimate on what the rate would produce if all taxes were collected in the fiscal year. We then approved what was said in Board of Education of Newport v. City of Newport, 171 Ky. 234, 188 S. W. 360, holding that the Commissioners properly refused to fix a rate which would produce more revenue than was necessary to meet expenditures, where the report had deducted from anticipated receipts the estimated amount of taxes which the School Board anticipated the city would fail to collect in the fiscal year covered by the budget. We held that the city was right in contending that the levy of $1 requested by the School Board was based on an unlawful computation since the estimate did not include anticipated collections. Following the Newport case, we suggested that if all taxes for a current year are not collected, and obligations are incurred in anticipation, such unpaid items must be included as anticipated expenditures in the following year, and the delinquent taxes for that period be added to the anticipated revenue for the year. We approved the Newport and Paducah cases in Blancett v. Leet, 297 Ky. 141, 179 S. W. 2d 223.

It is well said in an article, "County Debts in Kentucky," 31 K. C. J. p. 128, that the failure of the court to harmonize its decisions with sound principles of financial administration is apparent by singling out the one item of income, delinquent taxes. It was said that the court has been reluctant to permit the inclusion of expected collections from delinquent taxes in county revenue estimates, but required their inclusion in school tax estimates by upholding tax levying bodies in rejecting a rate so long as such deductions were included in budget estimates. It is suggested that sound financial administration requires deduction of anticipated current year delinquencies and the inclusion of expected collections from prior year delinquencies in making estimates. Instead of fortifying the "pay as you go" plan, the treatment to be accorded tax delinquencies has tended to inhibit the incurrence of debts by counties, and to encourage creation of indebtedness by school districts and to hamstring both concerning sensible financial administration. This notion of a sound plan was suggested in Swinburne v. City of Newport, 297 Ky. 820, 181 S. W. 2d 421, 423. There, upon examination of the financial statements filed in the record, in the absence from the statement and proof otherwise, we found that there ap-

peared to be an anticipation of a one hundred per cent collection of delinquencies. We made this suggestion: "Of course, if due allowance be made in estimates for a possible failure to collect 100% of the current taxes, it is proper to include the anticipated collections of delin-quencies, based upon experience and a reasonable regard for prospective economic conditions."

We have reached the conclusion that this reasoning has merit, and that the principles stated in the Paducah and Newport cases, supra, are unsound on this particular point. We, therefore, hold that it is incumbent on the Board of Education to include in its sources statement in the budget a reasonable anticipated amount of collections of taxes delinquent in previous years, based upon past years' experiences. But the Board has the right, and it may, deduct the amount of anticipated delinquencies in the collection of taxes under the current levy. The result may not make a great deal of difference, such depending largely upon economic conditions, and other factors.

In the instant case the Board in its budget included in its total of estimated expenditures the item "Debt Service," (sinking fund for bond retirements) the sum of $12,668.96, about which no question was raised. The taxing authority correctly concluded the rate too high to raise the amount for necessary expenditures, under the showing of increased valuations of properties; applying the principles announced, there should be, by using the nearer correct property valuations, little difficulty in determining what rate would result in giving to the Board such a sum as would meet its needs. We note that while the Board insisted on its rate of $1.76 ($1.50 plus 26 cents for debt service) the taxing authority agreed to fix the total rate at $1.55 the same as it was for the previous school year, which resulted, with other revenue sources, in a sum of more than $156,000. The amount sought for the ensuing year is shown in budget to be $154,438.16. The estimated receipts do not include the items above mentioned, but their inclusion in the manner stated will perhaps make little difference. Of the estimated this year's requirements, the amount sought to be raised by a tax levy was as shown, $76,959.08. At a rough estimate the rate, as applied to the nearest correct assessable property valuations, would realize something more than $82,500.

We note that during hearings the council offered to fix the rate at $1.55 (total), and it is claimed that at such rate the amount for needs as requested, will be considerably exceeded. This may be readily worked out, and if true then the Board should readily accept the proffered rate. If there be no agreement, the chancellor should permit the Board to amend its budget to the extent as indicated above, and the council should fix a rate accordingly.

It follows from what is above said that this opinion in one respect—the manner of dealing with delinquencies—is in conflict with Board of Education of Newport v. City of Newport, 171 Ky. 234, 188 S. W. 360; Board of Council of City of Winchester v. Board of Education of City of Winchester, 171 Ky. 692, 188 S. W. 755, and Blancett v. Leet, 297 Ky. 141, 179 S. W. 2d 223, and to that extent they are overruled.

Judgment reversed, with directions to set it aside and if no judgment be agreed the chancellor will direct the Board to amend its budget as indicated, whereupon council will fix a rate in conformity with the opinion.