## First Nat. Bank of Manchester et al. v. Hays et al.

Nov. 14, 1941.

Roy W. House for appellants.

A. T. W. Manning and Charles C. Smith for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing in part and affirming in part.

This action was instituted by the appellee taxpayers for the purpose of having determined and adjudicated the amount and validity of the indebtedness of Clay County. Neither an injunction nor a declaration of rights was sought, nor was it alleged that the issuance of refunding bonds was contemplated. Asserting that the indebtedness of the County exceeded the maximum permitted by Section 158 of the Constitution, and that all indebtedness, other than that contracted for necessary governmental purposes, was invalid because incurred in violation of Section 157, the validity of a bond issue of $75,000 in 1928, and one of $36,000 in 1930, was attacked on these and other grounds; and the holders of the bonds, as well as the holders of warrants and claims against the County, numbering in excess of two hundred, were made parties defendant. All unknown claimants and holders of bonds, warrants, or other evi-

dence of indebtedness against Clay County were made parties defendant under that designation. Warning orders were issued against the unknown, as well as against many of the known claimants; and the prayer embraced a request that the action be referred to the Commissioner with directions to hear proof and ascertain the names and location of all persons claiming to be creditors, and to determine the validity and priority of their respective claims. The remainder of the prayer was for costs and attorneys fees, and an "appropriate judgment of the Court marshalling the assets and equities of all legal claimants and of the funds and revenues of the County, and directing the settlement and payment thereof in accordance with the principles of equity and the law governing the same." We shall not attempt to further summarize the allegations of the lengthy petition other than by noting that while it was alleged that the fiscal records of the County had been destroyed by the burning of the court house in January, 1936, and that the Fiscal Court had declined to institute the present suit, no relief other than a determination and adjudication of the validity or invalidity of the outstanding bonds, warrants, and claims was sought. The scope of the litigation was further narrowed by the removal to the Federal District Court, on the petition of the holders of the $75,000 bond issue, of so much of the action as affected their rights, and the consequent abandonment by the Commissioner and the Chancellor of any attempt to determine the validity of the bond issues, or any question other than the validity of the claims otherwise evidenced. Some of the defendants demurred specially and generally to the petition and others filed answers. The action was referred to the Commissioner, who, after lengthy hearings, filed a report in which he recited the deficiencies in the County's revenues, notwithstanding the levy of the maximum tax, the resulting outstanding indebtedness, and his consequent conclusion that "the only claims which can be allowed are those which are governmental." The report then continued:

"It is therefore ordered and adjudged by this Commissioner that all claims which are governmental be, and the same are hereby, allowed. It is further ordered and adjudged by this Commissioner that claims, warrants, or judgments which are permissive are hereby disallowed. It is further or-

dered and adjudged that, all defendants in this case having been notified as previously stated, either by supoena or Warning Order Attorney, and they having failed to produce and file their claims, warrants, or judgments, the same, and each of them is hereby disallowed and forever held for naught; except those defendants who have resorted to the Federal Court as is hereinbefore set out.''

In separately numbered paragraphs were set forth summaries of the various claims presented, coupled with the Commissioner's rulings either ''allowing'' them because they represented governmental expenses, or ''disallowing'' them because they represented ''permissible'' expenditures, and because in some few instances they were insufficiently proven in the opinion of the Commissioner. Thereafter the Chancellor rendered an opinion and judgment in which he overruled the general and special demurrers, and in part stated:

''After a careful consideration of this voluminous record the Court has reached the conclusion that only the expenditures remaining unpaid which represent actual, indispensable governmental charges of the county can be upheld and allowed as fundable in this case, and for the purpose of classifying claims and warrants brought into this record and introduced in evidence and now before the Court it is the opinion of the Court that the following character of claim fall within the class that may be upheld and adjudged fundable under the situation presented by this record, namely:

''(1) Officers salaries and fees.

''(2) Expenses of elections.

''(3) County poor house.

''(4) Pauper idiots.

''(5) County live stock inspector.

''(6) Vital Statistics claims.

''(7) Expenditures for rent providing offices for the county officers during the construction of the Court house.

''(8) Necessary and essential record books and supplies for the keeping of public records of the county.

''(9) Expenditures for the necessary up-keep,

repair and insurance of the public buildings of the county.

"As to which of the particular claims fall within these classifications, and the correctness of the findings of the Special Commissioner the Court will sustain the report of the Commissioner in every respect in which it is found to conform to the views expressed in this opinion, which is to say, that all the claims found to be within the classifications above set out which are held and adjudged in this case to be valid and fundable as essential and indispensable governmental expenditures of the county and all claims not found to fall within this class must be disallowed and held invalid and not fundable. The rulings of the Court on exceptions to the Commissioner's report will be and are based on this statement, and the various exceptions filed to the Commissioner's report are sustained or over-ruled in accordance with the classification above set out, and adjudications as follows."

The judgment then sets forth in detail the claims which were adjudged "valid and fundable" followed by the statement that all claims and warrants not included in the list were "not necessary and indispensable governmental expenses and cannot be sustained as fundable indebtedness of the county." The exceptions to the Commissioner's report were sustained or overruled accordingly.

Of the numerous claimants whose claims were disallowed, only fourteen have appealed. While a brief styled "Brief on Appeal of Defendants, Appellants First National Bank of Manchester, et al," has been filed, the only ground for reversal urged is that county warrants assigned to that Bank aggregating $17,349.81, and theretofore adjudged to have been issued for necessary governmental expenditures had been disallowed by the Commissioner because of insufficient proof. A separate brief for the appellant, Russell Dyche, has been filed, seeking on other grounds a reversal of so much of the judgment as disallowed his claim. The appellee taxpayers have sought and been granted a cross appeal, and complain primarily of so much of the judgment as classifies county poor house, pauper idiot, and county livestock inspector claims as indispensable governmental charges of the County. The action of the Commissioner

and the Court in allowing a claim of the First State Bank of Manchester for $2,042.64 based on an assigned county warrant for "old claims re-allowed" is also criticized on the theory that the Fiscal Court had no power to re-allow claims.

The right of the appellees to maintain this action is questionable, in view of the ineffectiveness, if granted, of the relief sought, and the provisions of the County Debt Act, Kentucky Statutes 938q-1 to 938q-24, which became a law April 20, 1938; but since the two appellants in whose behalf error is claimed have not questioned the right of the suing taxpayers to maintain the action, and the judgment necessarily is inconclusive of the County's right to fund any particular debt, we shall confine this opinion to a discussion of the questions specifically raised in the briefs, reserving all others.

### The Rejected Claim of the First National Bank of Manchester.

In a declaratory judgment proceeding instituted by Clay County against Robert Sizemore for the purpose of having determined the validity of certain outstanding warrants of the County and the County's right to fund them, a judgment was rendered prior to the institution of the present litigation specifically adjudging that the claims assigned to the First National Bank of Manchester and rejected in the present action were "governmental claims and claims issued for the salaries of the constitutional officers of Clay County and other governmental purposes," and that the County had the legal right to fund them. An appeal from that judgment was dismissed by this Court on May 2, 1939, because it had not been perfected within the prescribed time. Clay County v. Sizemore, 278 Ky. 120, 128 S. W. (2d) 556. It is correctly argued by the Bank that this judgment is conclusive and binding upon the Court in the present proceeding, and that having introduced it in evidence, together with the record of the action in which it was rendered, the Bank was not, for the purposes of this suit, required to produce other proof in order to establish the validity of its claim, or that the assigned warrants of which it was composed were issued for necessary governmental purposes. In an attempted avoidance of this application of the doctrine of res judicata, appellees' counsel cite the provisions of Kentucky Statutes 186c-7 which provides that in an action to obtain

judicial approval of the issuance of bonds by municipalities, the approval shall not be granted unless it is shown that the indebtedness represented by the bonds was properly created and within the constitutional limitations of indebtedness; and that where a refunding of indebtedness evidenced by a judgment is sought, the record in which the judgment was rendered must be made a part of the petition, and that record clearly establish that the County's indebtedness was within the constitutional limitation; and that no judgment declaring the amount of such indebtedness shall be received as evidence in any Court unless the record upon which it was entered clearly establishes that the indebtedness of the municipality does not exceed the constitutional limit. But it seems clear that the Statute referred to can have no application to the present suit, since it is neither a proceeding to authorize or approve the issuance of bonds or obligations of any type, nor to secure otherwise the payment of any judgment previously rendered. We are not advised, either by the record before us or by the briefs of counsel, whether the County issued or attempted to issue bonds pursuant to the judgment in the case of Clay County v. Sizemore heretofore referred to, nor shall we attempt to pass upon the validity of any obligation which may have been issued pursuant thereto. Clearly, under the allegations of the present suit, the Court was not warranted in adjudging that any of the claims presented were "fundable."

The Rejected Claim of the Appellant, Dyche.

The Commissioner rejected this claim, stating merely:

"As to County Warrant No. 236A, dated November 25, 1931, of Russell Dyche, in the sum of $1853.64, payable out of the General Fund, for old claims No. 124 and No. 125, reallowed, and which this holder, by affidavit, says was for election supplies and furnishing ballots to Clay County, it is held by the Commissioner to be a governmental expense, but is disallowed for lack of proof as to its validity and legality."

The petition showed that many of the County records had been destroyed by the court house fire, and Dyche, in his proof of claim, set forth that the warrant had been delivered to him "to cover the furnishing of

ballots and election supplies, all of which were ordered by the Clay Fiscal Court, and all of which ballots and supplies were furnished pursuant thereto,'' and that the warrant had never been paid. Apparently, no counter proof was introduced, and we perceive no reason why the claimant should be barred by the present adverse judgment from establishing his claim, when, and if the opportunity for its collection or refunding is presented.

## Cross-appeal.

Since we approve them, we set forth the Chancellor's reasons for adjudging necessary the governmental expenditures questioned by the cross-appeal:

''The Court has allowed certain claims to the live stock inspector in this case as necessary and indispensable governmental expenses and he is inclined to this view, in view of the peculiar mandatory language of the statute creating this position. (Kentucky Statute Section 63c-18)

''The Court has allowed above claims for pauper idiots support because under the Statute providing therefor (Kentucky Statute 216aa-57) the Circuit Court is required under stated circumstances to certify the allowance thereof to the Fiscal Court, the Statute further provides that one half thereof be paid by the State. The Court is of the opinion that this duty imposed upon the county in collaboration with the State is mandatory in its character and that it is the duty of the county to comply therewith.

''The Court has allowed herein as fundable, claims for the county poor farm. It is true that the Statute (Kentucky Statute 1840) does not require the county to provide such facilities for its needy. However, from a careful consideration of the opinions of our Appellate Court, where the question of what expenses are and what are not of an indispensable governmental nature, is discussed, the Court has repeatedly announced that illustrative of what are indispensable governmental expenses are expenditures for salaries of the officers, expenses for elections and maintenance of Institutions. It has also been held that what institutions are necessary vary in different counties.

''The Trial Court is of the opinion that, while

the county may or may not, under the Statute, establish a poor farm, yet, having found same to be necessary and having established such an institution, the same thereby becomes one of the facilities as necessary and perhaps as important as some of the other services of county government which are recognized as indispensable. The Court is of the opinion and holds that while the creation of such Institution is by the Statute discretionary with the Fiscal Court, once established, its maintenance is obligatory.''

Cited by the Chancellor in support of his conclusions are McCrocklin v. Nelson County Fiscal Court, 174 Ky. 308, 192 S. W. 494; Randolph v. Shelby County, 257 Ky. 297, 77 S. W. (2d) 961.

Appellees' objection to the claim of the First State Bank of Manchester for $2,042.64 may be disposed of by stating that the Commissioner found and reported that the ''re-allowed'' and assigned claims composing it were for necessary governmental expenditures, and no authority has been cited which would justify the rejection of such claims because of their ''re-allowance'' by the Fiscal Court. At least, we are unwilling in a proceeding in which the ultimate payment or funding of the claim is not an issue to bar the claimant from thereafter asserting his right to payment.

So much of the judgment as adjudges invalid and not fundable the specified claims of the appellants, First National Bank of Manchester and Russell Dyche, is reversed; and the appeal of the remaining twelve appellants named in the statement of appeal is dismissed without prejudice. On the cross-appeal, so much of the judgment as adjudges any of the outstanding claims to be fundable is reversed; otherwise, the judgment is affirmed on the cross-appeal.