## Griffin et al. v. Clay County et al.

### Burchell v. Same.

February 11, 1947.

Rehearing denied May 23, 1947.

Ray C. Lewis, Judge.

D. Y. Colson and John M. Lyttle for appellants.

Ernest Woodward amicus curiae, for appellants.

A. E. Funk, Sarah Chancellor, Chat Chancellor and John Darnell for appellees and cross-appellants.

M. B. Holifield, Assistant Attorney General, and R. Vincent Goodlett, Attorney for Department of Revenue or amicus curiae, for appellees.

OPINION OF THE COURT BY JUDGE DAWSON—Reversing.

These appeals present the same questions of law and have been consolidated. One deals with the assessment of taxes in Clay County in the fiscal years 1944-45, 1945-46, and the other with the assessment of taxes in that county in the fiscal year 1946-47. The parties in their briefs have treated the appeals as one case, and we shall do likewise.

The action involves two classes of indebtedness. The first class consists of two funding bond issues, one being a $75,000 issue of the year 1928, which bears interest at the rate of 5¾% per annum. All matured bonds of this issue are unpaid.

The other bonds were issued in the year 1930, in the principal amount of $36,000, and bear interest at the rate of 6% per annum. The matured bonds of this issue are also unpaid.

The validity of both these bond issues was tested by actions in the United States District Court for the Eastern District of Kentucky, which adjudged the bonds to be valid and binding obligations of the county. These judgments are pleaded and relied upon in this action.

The other indebtedness involved here is a floating debt made up of claims for necessary governmental expenses which were never paid. These various claims have been adjudged to be valid and binding obligations of Clay County by a judgment of the Clay Circuit Court, which was affirmed by this court in the case of First National Bank of Manchester v. Hays, 288 Ky. 297, 156 S. W. 2d 121. This judgment is likewise pleaded and relied upon.

The appellants are the owners of certain funding bonds of both issues and are also the owners of some of the judgments against Clay County which make up the second class of indebtedness. By this action they sought to require the county officials of Clay County to levy a tax sufficient to service the entire indebtedness. The 50 cent levy which is annually levied by Clay County for

general fund purposes does not produce (after payment of necessary governmental expenses) sufficient revenue to pay the interest upon the indebtedness involved here, with the result that each year Clay County becomes more deeply involved financially. It is claimed that the fiscal court of Clay County is required by the provisions of Section 159 of the Kentucky Constitution to levy an annual tax sufficient to pay the interest on and create a sinking fund for the retirement of the principal of these debts within 40 years, even though the levy exceeds the 50 cents provided by Section 157 of our Constitution. The circuit court did not agree with this contention and this appeal followed.

The case is before us on the pleadings and the exhibits. There is, of course, no controversy about the facts, and the question presented requires a study of Sections 157 and 159 of our Constitution in order to determine whether the relief sought should be granted.

Section 157 contains two separate provisions dealing with two different subjects. First—it provides that the tax rate for any county shall not exceed 50 cents on the $100 unless it should be necessary to enable such county to provide a sinking fund for an indebtedness contracted before the adoption of the present Constitution. Second—it provides that no county shall be authorized to become indebted for any purpose for any year in an amount exceeding the income and revenue provided for such year without the assent of two-thirds of the voters of the county. It further provides that any indebtedness contracted in violation of this section shall be void. See Brown v. Board of Education of City of Newport, 108 Ky. 783, 57 S. W. 612; Southern Bitulithic Co. v. Detreville, 156 Ky. 513, 161 S. W. 560; City of Winchester v. Nelson, 175 Ky. 63, 193 S .W. 1040, and Ballard v. City of Shelbyville, 180 Ky. 135, 201 S. W. 452.

Section 159 provides that when any county is authorized to contract an indebtedness it shall be required at the same time to provide for the collection of an annual tax sufficient to pay the interest on said indebtedness and create a sinking fund for the payment of the principal thereof within not more than 40 years from the time the debt is contracted.

Prior to 1917, this court consistently applied a strict construction to Section 157. We said that Section 159 was modified by Section 157, and that whenever a county incurred an indebtedness it must levy a sufficient tax to pay the interest and retire the principal within 40 years, provided the 50 cent levy specified in Section 157 would so service the debt.

The effect of these decisions was that a proposed debt that could not be serviced from the 50 cent levy set out in Section 157 was void. See Tipton v. City of Shelbyville, 139 Ky. 541, 107 S. W. 810; Southern Bitulithic Company v. Detreville, supra, and Troutman v. Hays, 101 S. W. 976, 31 Ky. Law Rep. 204.

If we had continued to adhere to this construction of these two sections of our Constitution we would, of course, refuse the relief requested and doubtless there would never have been an occasion for such a request, but in the year 1917 this court, as then constituted, took a new and different view of these two sections of the Constitution, and for the first time allowed counties to levy a tax in excess of 50 cents on $100 of assessed valuation for the purpose of servicing an indebtedness which had been created pursuant to a vote of the people in the manner set out in the latter part of Section 157. See McCrocklin v. Nelson County Fiscal Court, 174 Ky. 308, 192 S. W. 494; City of Winchester v. Nelson, 175 Ky. 63, 193 S. W. 1040, and Nelson County Fiscal Court v. McCrocklin, 175 Ky. 199, 194 S. W. 323.

It is somewhat difficult to follow the reasoning of the court in the three cases cited, since the provision of Section 157 concerning the creation of a debt with the assent of 2/3 of the voters relates only to a debt which exceeds the revenue provided in any one year. It has no relation whatever to the maximum levy specified in the first part of that section of the Constitution. However, since that time these cases have been consistently followed, and it is still recognized that an indebtedness authorized by a vote of the people permits a levy in excess of the maximum specified in Section 157. Fulton County Fiscal Court v. Southern Bell Tel. & Tel. Co., 285 Ky. 17, 146 S. W. 2d 15.

At this point it is well to call attention to the different constructions placed on these two sections of our

Constitution by this court in connection with the second part of Section 157 which prohibits a county from becoming indebted in any year in excess of the income and revenue provided for such year. Beginning with City of Providence v. Providence Electric Light Co., 122 Ky. 237, 91 S. W. 664, and followed by Overall v. City of Madisonville, 125 Ky. 684, 102 S. W. 278, 12 L. R. A., N. S., 433, and Carter v. Krueger & Son, 175 Ky. 399, 194 S. W. 553, we held in effect that "the revenue and income provided for the year," as used in Section 157, did not mean the revenue derived from the actual levy, but the revenue that would be produced from a levy of the maximum amount provided for. Following those cases we held, in Vaughn v. City of Corbin, 217 Ky. 521, 289 S. W. 1104, that an issue of bonds to fund a floating indebtedness which had accrued during former years, and exceeded the amount that was realized from the actual levy made, but did not exceed the amount that would have been realized if the maximum levy had been made, was valid. This rule was followed in City of Frankfort v. Fuss, 235 Ky. 143, 29 S. W. 2d 603, and Hill v. City of Covington, 264 Ky. 618, 95 S. W. 2d 278, but there were vigorous dissenting opinions in those two cases. In those dissents it was pointed out that this rule licensed officials to make levies below the maximum in order to curry public favor, and then make expenditures in excess of the revenue actually provided for, and thus incur floating indebtedness which could be later funded and passed on to future generations. It was said that such a construction defeats the clear and manifest purpose of the provisions of the sections of our Constitution which we now have under consideration.

Then, in 1938, the case of Payne v. City of Covington, 276 Ky. 380, 123 S. W. 2d 1045, 122 A. L. R. 321, was decided, and in which case we determined that the opinions just referred to were erroneous, and overruled them and all like them. We flatly said that from that time on, a county or other taxing district dealt with by Section 157 could not (without a vote of the people) create debts in any year in excess of the actual revenue provided for that year. However, the effect of that opinion was made prospective in order to preserve and protect property rights which had been created because of our prior interpretation of these sections of the Con-

stitution. In other words, we recognized that our construction of these sections of the Constitution was erroneous and determined to correctly interpret the meaning of those sections, but since parties dealing with public bodies had relied upon the previous construction we had placed thereon, we were obligated to protect their rights.

We have held that Section 157 does not prohibit the levy of taxes (in excess of the Constitutional limit) as special assessments for street improvements in towns and cities, and for the construction of ditches and drains in drainage districts. Williams v. Wedding, 165 Ky. 361, 176 S. W. 1176. Delker v. City of Owensboro, 61 S. W. 362, 22 Ky. Law Rep. 1777; Levi v. City of Louisville, 97 Ky. 394, 30 S. W. 973, 28 L. R. A. 480; and Maddux v. City of Newport, 14 S. W. 957, 12 Ky. Law Rep. 657.

In Menar v. Sanders, 169 Ky. 285, 183 S. W. 949, L. R. A. 1917E, 422, we held that the limitation imposed by Section 157 applies only to indebtedness created, or attempted to be created, by contract, and has no application where the liability incurred is for a tort resulting from a municipality's negligence. In that case it was said that a levy in excess of the Constitutional limit should be made to provide payment for a judgment recovered against a municipality in a tort action.

In Hopkins County v. St. Bernard Coal Co., 114 Ky. 153, 70 S. W. 289, 290, we held that the phrase "no county * * * shall be authorized or permitted to become indebted" does not refer to the necessary expenses of governmental functions of the county which are compulsory obligations cast upon it by law, but in that case the question of an excess levy was not presented. However, in Landrum v. Ingram, County Judge, 274 Ky. 736, 120 S. W. 2d 393, we indicated that a levy in excess of the maximum rate could not be made for the purpose of paying a debt created for admittedly necessary governmental expense. This principle was again announced in Fulton County Fiscal Court v. Southern Bell Tel. & Tel., supra. See also Parsons v. Arnold, 235 Ky. 600, 31 S. W. 2d 928.

Notwithstanding these decisions, we have determined to again examine and construe the two sections of our Constitution referred to. Such examination leads

us to the conclusion that the framers of our Constitution intended first to prohibit the creation of indebtedness by taxing districts without making provisions for its payment, and second, that every valid debt of such taxing district must be paid. Stating it differently, it appears that every effort was made to avoid situations similar to the one which is confronting us now. An examination of the Constitutional Debates indicates to us that the Constitution was intended to protect the financial integrity of counties and other taxing districts in this Commonwealth.

Section 159 provides—"whenever any * * * county * * * is authorized to contract an indebtedness," it shall be required to provide for the collection of an annual tax sufficient to pay the interest on and create a sinking fund for the payment of the principal thereof. This brings us squarely to the question: Was Clay County "authorized to contract" these debts? It was. Why? Because the decisions of this court authorized it to do so. See cases cited supra, decided prior to Payne v. City of Covington. Had we adhered to the construction of Section 157 as announced in the cases preceding McCrocklin v. Nelson County, City of Winchester v. Nelson, Nelson County v. McCrocklin, City of Providence v. Providence Electric Light Co., and Vaughn v. City of Corbin, supra, these debts would not have been created, or if they had been created they would have been declared invalid. But since that is not the case we find ourselves confronted with a problem which is necessarily one of our own creation. Since the decisions of this court permitted Clay County to incur the debts involved here, we are compelled to say that the county was "authorized to contract" such debts within the meaning of Section 159 of the Constitution. Having reached this point it follows that the county "shall be required * * * to provide for the collection of an annual tax sufficient to pay the interest on said indebtedness, and to create a sinking fund for the payment of the principal thereof," even though an amount in excess of the maximum specified in Section 157 must be levied.

Since our decision in Payne v. City of Covington, and the adoption of our County Budget Act, KRS 68.210 etc., the danger of future financial involvement of the counties has been practically eliminated. The public

generally is now on notice that this court will henceforth adopt a sound and healthy construction of our Constitution, and credit extended to taxing districts in disregard of our Constitution and the comments herein, and in Payne v. City of Covington, will be at the creditor's risk.

It follows that the judgment must be and it is reversed for proceedings consistent herewith.

Judge Thomas dissenting.

In stating my reason for dissenting from the majority opinion in this case I will abstain from a lengthy discussion of the questions involved.

I, and the other members of the court joining in this dissent, admit that the total indebtedness sought to be funded by Clay County has been held to be valid, partly by a judgment of the Federal Court for the Eastern District of Kentucky, and partly by judgment of this court; but I dissent from the majority opinion notwithstanding that fact. I conclude that the indebtedness mentioned in section 159 of the Constitution—which is the only one upon which the ruling of the majority can be upheld—refers to a voted indebtedness over and above that which tax levying authorities of municipalities may make, under the provisions of its section 157. Section 159 prescribes that a sufficient tax to pay the interest and to create a sinking fund for the eventual payment of the character of indebtedness referred to therein shall be levied at the time the indebtedness is created.

However, passing all irregularities in the creation of the debt sought to be refunded by this action, and conceding that it is valid in its entirety, the law, as I conceive it to be, is that there is a distinction between a valid debt of a municipality, and its ability to pay that debt from funds to be raised by maximum limitation of taxation prescribed in the Constitution, which constitutes the only means by which such municipalities may obtain revenue. An individual may owe a valid debt but without funds to pay it, or facilities for obtaining the funds. His creditor in that case has no remedy by which he can enforce payment, but the debtor may be relieved of payment by taking the bankrupt law. Congress has heretofore extended the benefits of the bankrupt law to mu-

nicipalities under certain conditions, none of which prevents Clay County from reaping the benefits thereof.

The old and homely adage is that "you cannot get blood from a turnip," and the reason that the turnip in this case (Clay County) has no blood is that it has consumed all the blood which the Constitution provided it should have, and this court has no right to administer a transfusion contrary thereto. I therefore conclude that the constitutional limitations upon the creation of such indebtedness should be upheld rather than an individual creditor of the municipality should enforce the collection of his debt, even if it is a validly created one.

Judge Sims and Judge Siler concur in this dissent.