# Herd et al. v. Lyttle et al.

April 26, 1949.

As Modified on Denial of Rehearing

October 4, 1949.

T. T. Burchell for appellants.

Roy W. House and J. D. White for appellees.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

This is a suit by appellants, four citizens and tax-payers of Clay county, suing on behalf of themselves and all other taxpayers in the county against the county judge and all the magistrates in the county, constituting the fiscal court of Clay county. The county clerk and county treasurer were also made defendants in the original petition and by amended petition the circuit clerk, the county attorney, the sureties on the bonds of the above officers and J. D. White, a member of the County Budget Commission, were made defendants. This appeal involves another chapter in the tangled financial affairs of Clay county, various phases of which have many times been before this court and before the Federal Court of the Eastern District of Kentucky.

The pleadings are long and involved and attached thereto as exhibits are large portions of the record in a Federal court case and previous State court cases. The proof in the case is not extensive, but filed therewith as

exhibits are a vast number of old county warrants, proof of claims, copies of bonds, parts of old court records and other items concerning the past financial history of Clay county, many of which have no bearing on the specific case here involved and have the effect only of burdening and complicating the record and adding to the cost of this appeal.

To set out the extensive pleadings in any detail would extend this opinion to an undue length. From them and from the proof and the entire record, we gather that there have been outstanding warrants issued by Clay county, some as far back as 1932, which were issued in payment for salaries of officials, services rendered and supplies furnished to the county and for other indebtedness owing by the county which it was unable to pay out of its current revenues. These warrants have floated around over the county, being transferred from the original parties, to whom issued, to others, and they to others, no doubt at a considerable discount in many cases. In other words, there has probably been some speculation in these warrants, part of it no doubt, as indicated by the pleadings and proof, by officials of the county. As a result of previous litigation heretofore referred to, some in State and some in Federal courts, most of the large outstanding indebtedness of Clay county has been refunded into a large bond issue with a cheaper rate of interest than the indebtedness formerly bore. It is contemplated that this refunded bond debt will be ultimately retired by additional taxes raised in the manner authorized by this court in the case of Griffin v. Clay County, 304 Ky. 592, 201 S. W. 2d 733. The warrants involved in the present suit were not included in the recent refunding operation referred to above, the reason being, according to appellees' pleading, that the amounts were comparatively small and the warrants were owned largely by local people. To take care of these outstanding warrants the fiscal court, acting with the Clay County Budget Commission and with the approval of the State Local Finance Officer, set up in the 1947-1948 budget a special fund of $16,667.00 designated as Special Fund No. 300-F 3. The original petition sought an injunction to prevent any of the outstanding warrants being paid out of this special fund, it being the contention of appellants that all these warrants were

illegal and void. No temporary injunction or restraining order was issued and the fiscal court proceeded to pay out of this fund to twenty holders of these warrants a total of $11,180.09 in payments of various warrants held by them. Included in the amounts paid to the parties referred to above was the sum of $1175.75 paid to Jim Langdon, circuit clerk of Clay County, in payment of several outstanding warrants held by him. By the various petitions and amended petitions appellants seek to recover from appellees all the sum paid out as shown above plus an additional sum of $1175.75, it being alleged that Jim Langdon acquired the warrants, for which he was allowed payment, by purchase and speculation in violation of KRS 61.240, and that by reason of that statute appellants are entitled to recover for the county double the amount paid him, or $2,351.50. Included in the above amounts paid out of Special Fund 300-F-3, and sought to be recovered in this suit by appelalnts, is the sum of $973.05 paid to J. D. White, a member of the County Budget Commission, it being alleged that he acquired said warrants at a discount in violation of KRS 61.190, and recovery is sought against him and the other members of the County Budget Commission and the bondsmen of such as were under bond. Not included in the amounts above referred to as being paid out of Special Fund No. 300-F-3, the additional sum of $789.74 is sought to be recovered from the members of the fiscal court and their bondsmen for misappropriation of funds in payment for what appellants call an illegal contract which the fiscal court entered into with B. P. House whereby the said court cancelled a delinquent land tax sale bill in the amount of $789.74 in payment by the court for land taken by Clay county for the right of way in the construction of State Highway No. 11.

To summarize, it appears from the welter of pleadings and exhibits that appellants are seeking to recover on behalf of the county from members of the fiscal court and various county officials and the sureties on their bonds the amounts paid out of Special Fund No. 300-F-3, including double the amount paid Jim Langdon, and an additional sum, not paid out of that fund, to B. P. House, it being contended that all said sums were paid out illegally.

Upon submission of the case on the pleadings, ex-

hibits and proof, the lower court, by written opinion filed in the record, concluded that the appellants had not shown themselves entitled to the relief sought or any part thereof or any relief whatever, and entered a judgment dismissing appellants' petition and it is from that judgment that this appeal is prosecuted.

The first question to be determined is the general validity of the old outstanding warrants, that is the twenty warrants paid out of Special Fund No. 300-F-3, including the warrants of Jim Langdon and J. D. White. Special consideration will be given later in this opinion to the question raised as to the right of the county to recover the money paid out on these two claims under allegations that they were acquired by Langdon and White in violation of certain statutes. We consider here only the issue raised by the pleadings and proof as to the validity in general of all the warrants, appellants contending that all the warrants have been declared invalid in one of the suits hereinafter referred to, appellees contending that they were held to be valid by one or the other of these very same suits. This presents a clean-cut issue. Little proof was taken on that question and we must rely largely on the exhibits. Among these exhibits is a large part of the record in the case of Woodmen of the World v. Clay County, D. C. E. D. Ky., 84 F. Supp. 125, with which case there had been consolidated the cases of Stanley Gates v. Clay County, another Federal court case, and E. P. Hays v. W. G. Abner, a case then pending in the Clay Circuit court. As we read the record in the Woodmen of the World case the judgment validated certain claims and outstanding warrants against Clay county which were filed in that suit and ordered distributed among those whose claims were adjudged valid a percentage of a certain fund which was in the registry of the Federal court. Under that order those whose claims were proven and allowed received a pro rata share of the fund in court, actually less than one per cent of their allowed claims. Some claims filed in that action were disallowed for various reasons but none of those disallowed are involved in the present litigation. There was no order entered in that case under which any claims not filed in that suit were invalidated or barred from ultimate collection against Clay county, but only an order barring any claims not filed and allowed in that suit

from participating in the small fund held in the registry of the court for distribution. None of the claims or warrants involved in the present litigation were filed in the Federal court suit and were not therefore invalidated. They simply did not participate in the percentage distribution referred to. On the contrary, it appears from other exhibits filed in the record that all the original warrants or claims which were paid out of Special Fund No. 300-F-3 in the present suit were adjudged valid and fundable legal claims against Clay county in the case of E. P. Hays v. W. G. Abner or in the case of Clay County v. Sizemore, both in the Clay Circuit court. This latter case came before this court, and appeal was denied because it was not filed within the time required under the Declaratory Judgment Act, Civil Code of Practice sec. 639a—1 et seq., under which the suit was brought. This case is reported in 278 Ky. 120, 128 S. W. 2d 556. Denial of the appeal for want of jurisdiction left in effect the judgment of the lower court. Some phases of the former case, Hays v. Abner, came before this court under the style of First National Bank of Manchester v. Hays, 288 Ky. 297, 156 S. W. 2d 121. In that appeal certain claims which had been disallowed in the lower court were allowed on appeal. None of the claims involved in the present case were adversely affected in this appeal. From a consideration of all these cases and the record in the present case we reach the conclusion that appellants have not sustained their contention that the claims involved in this litigation have been declared invalid in any of the cases on which they rely but on the contrary they have been held valid and legal claims against Clay county by one or the other of the two suits relied on by appellees. Appellants contend that the judgments entered in the two suits above referred to are not binding because they are merely declaratory, by which they appear to mean that they were judgments entered in suits under the Declaratory Judgments Act. Of course there is no ground for this contention since judgments entered in suits brought under that act are just as effective and binding as suits brought under any other section of the code. T. T. Burchell, attorney for appellants, who has participated in practically all the litigation involving Clay county fiscal affairs for many years, testified in this case but was unable to point out any warrant involved

in this litigation which has been adjudged invalid. In fact he admits that they were valid when issued, but contends that they are now barred by limitations.

This brings us to our second point in issue which is: Are the warrants here involved barred by limitations? Some of the warrants were issued and have been outstanding since 1932 and 1933 and many have been transferred and assigned by their original owners or subsequent holders. It appears to be appellants' contention that these warrants are negotiable instruments placed on the footing of a bill of exchange and are therefore subject to the five year statute of limitations, as set out in KRS 413.120. We have held that a claim against a county for services is not a negotiable instrument and a purchaser takes it subject to the defense of payment or any other defense the county might have had against the assignor. Perry County v. Eversole, 98 S. W. 1019, 30 Ky. Law Rep. 453; Harlan County v. Howard, 246 Ky. 791, 56 S. W. 2d 365. Since the warrants here involved were issued for money due various persons for governmental purposes and are in effect written orders for the allowance of money and therefore a contract in writing, the fifteen year statute, KRS 413.090, is controlling. Hardin v. Town of Highland Park, 144 Ky. 489, 139 S. W. 765. Furthermore, the warrants here involved were validated by a judgment entered in one or the other of the two cases heretofore referred to. There can be no doubt but that a judgment is good for fifteen years. Appellees contend that even if technically barred by limitations, no one but the fiscal court could raise that point and since these claims were paid by the court without raising the question of limitations, such limitations, if any, were waived. In view of our holding above that these warrants are not barred by limitations, it is not necessary for us to decide the question of waiver or failure to raise the question of limitations.

We take up next the three specific cases set out in the pleadings in which Jim Langdon, circuit clerk, was paid out of this special fund $1175.75; J. D. White, member of the County Budget Commission, was paid $973.05, and B. P. House was paid $789.74.

The amount paid Langdon is made up of five old warrants that had originally been issued to other people,

some as far back as 1932 and 1933, and had been transferred to him by endorsements on the back of the warrants. This is the basis for appellants' claim that he bought up and speculated in these warrants in violation of KRS 61.240 and therefore appellants should be allowed to recover in this taxpayers' suit double the amount of these warrants. The lower court sustained a special demurrer to that paragraph of the amended petition which sought recovery against Langdon, and we think correctly so. KRS 61.240 provides that any county attorney, circuit or county clerk or their deputies who purchase or speculate in any claim allowed by the fiscal court of his county shall be fined in a sum twice the amount purchased or speculated in by him. If Langdon bought up these warrants while he was circuit clerk, there would seem to have been a violation of the statute, but the enforcement of the statute is the duty of the commonwealth's attorney and the double fine, if recovered, would inure to the benefit of the state, not the county. It could not be recovered in a taxpayer's suit on behalf of the county under the pleadings in this case.

The amount paid J. D. White out of this special fund was for an old warrant which had been issued to James Sizemore in 1933, and had been transferred to White by endorsement on the back thereof. White was a member of the County Budget Commission when this claim was allowed in 1948, and appellants say its payment to him by the fiscal court violates KRS 61.190 which prohibits any pubilc officer from receiving, directly or indirectly, any interest, profit or perquisites arising from the use or loan of public funds in his hands or to be raised through his agency. If it could be said that as a member of the County Budget Commission the special fund out of which his warrant was paid was raised or allocated by the agency of which he was a member, a point we do not decide, the penalty is punishment by confinement in the penitentiary for one to five years and the guilty party would be disqualified from holding public office thereafter. This is clearly a criminal offense and its enforcement is in the hands of the commonwealth's attorney and the county attorney. It could not be recovered by a general taxpayers' suit such as this and under the pleadings in this case.

As to payment of the B. P. House warrant by the

cancellation of a delinquent tax bill, little need be said. There was no proof on this question and since appellants make only a passing reference to it in their brief and give no reasons why the transaction was illegal, we will consider appellants' contention, as set up in the pleadings, as abandoned. They show no reason why a contract under which the fiscal court cancelled a delinquent tax bill owing the county in payment of a debt which the county owed the taxpayer for property acquired from him, is a misappropriation of public funds. It might have been irregular or illegal, but we cannot assume it on the mere statement in the pleadings.

Another point raised by appellants is that the second amended petition was not controverted by answer. The first paragraph of this amended petition simply added the names of six people to the fourteen who had already been named in the first amended petition as having been paid various sums out of Special Fund No. 300-F-3 by the fiscal court. Then as a second paragraph it proceeds to copy as part thereof almost the entire record of the Federal court case of Woodmen of the World and other cases consolidated with it, totaling fifty-nine pages. It would have been most difficult to have filed an answer to this second paragraph, which should have been filed as a mere exhibit. The case proceeded and proof was taken as though all issues had been made up, and there is filed in the record a stipulation of counsel that all the warrants referred to in the second amended petition had been issued to various parties, that the amounts owing to claimants were paid out of the special fund and that all warrants involved should be filed and considered as evidence. Under all these circumstances we think the failure to controvert the allegations of the second amended petition was waived and no harm resulted from any failure to controvert.

This covers all the direct points in issue on which a decision can be made. In the lengthy pleadings and in his brief, attorney for appellants by direct accusation, insinuation and innuendoes indicates that, to paraphrase Hamlet, there is something rotten in Clay County. That there is, or has been, something rotten in its financial affairs for a long time can be read by all men who read the court records that have come before this court and

the Federal courts. Local politics, bad assessment practices and the failure of officials to raise sufficient revenue to meet current expenditures and to keep expenses within the revenues, all have contributed to the chaotic condition of the fiscal affairs of the county and given it a bad reputation among the people interested in such matters.

One of the attorneys for the appellees, who has had much experience with county fiscal affairs through his former connection with the State Revenue Department, says in his brief that Clay county is now in better condition financially and more nearly solvent than it has been since 1922; that this is the first fiscal year that the county has not been obliged to borrow against anticipated revenues and the first year it has had an available surplus for approximately thirty years. Let us hope that this is true. If the cleaning up of long outstanding warrants by a special fund, such as is shown in this record, will contribute to this bettered condition of the county's fiscal affairs, it will be a consummation devoutly to be wished.

Since the judgment of the lower court is in conformity with the views herein expressed, it is affirmed.

Judgment affirmed.