## Farmers State Bank et al. v. Owsley County et al.

January 26, 1951.

Rehearing Denied April 27, 1951.

E. B. Beatty, Judge.

858

Funk, Chancellor & Darnell for appellants.

W. Clay Robinson, John W. Walker and S. H. Rice for appellees.

JUDGE LATIMER—Reversing.

Appellant, Charles A. Hinsch & Company, had procured, by assignment from the original holders, certain warrants issued by the Owsley County Fiscal Court, and certain judgments against Owsley County, all of which, at the time of the procurement, were outstanding and past due.

Action was filed by the assignee in the Owsley Circuit Court under the Declaratory Judgment Act, Code of Civil Practice, sec. 639a-1 et seq., seeking an order adjudging the warrants to be valid outstanding claims against the County, and further seeking a mandatory order directing the Fiscal Court to levy and collect a sufficient tax to pay the interest upon the indebtedness as it becomes due and to pay the principal thereof within not more than 40 years. In addition to Owsley County, J. M. King, the Judge thereof, the magistrates, and the Budget Commission, the State Local Finance Officer in and for the Commonwealth of Kentucky, and the Attorney General were named as parties defendant. The Attorney General and the State Local Finance Officer filed special demurrers to the petition on the ground that they were not proper parties to the action. The defendant, Owsley County, filed special demurrer on the grounds that plaintiff had no legal capacity to sue and that the assignors of the judgments and warrants were necessary parties. The assignors, by intervening petition, became parties to the action.

Apparently, the case remained on the docket without any further action until in November 1947, when plaintiffs filed an amended and substituted petition, wherein so much of the action as involved the validity of the County warrants was dismissed without prejudice. The action as against the defendants, Attorney

General and State Local Finance Officer, was also dismissed.

Consequently, the amended and substituted petition left for consideration only those judgments originally obtained by Charles A. Hinsch & Company, assignee, through Farmers State Bank of Booneville, escrow agent for Hinsch & Company.

It was pleaded in the amended and substituted petition, as the actual controversy, that it was the duty of the Owsley Fiscal Court to levy a sufficient tax to establish the sinking fund required by Section 159 of the Constitution of Kentucky, even though the rate should be in excess of 50c on each $100 of the assessed valuation of the taxable property, while the defendants contend that under Section 157 of the Constitution, the Fiscal Court cannot levy more than 50c on each $100 of the assessed valuation.

The court refused to direct the levy of any tax greater than an amount of 50c on each $100 of the assessed valuation and dismissed plaintiffs' petition. From that judgment this appeal is prosecuted.

Appellees insist that the court properly dismissed the action, and, no doubt, are here reiterating the grounds and propositions urged below. We shall first discuss those propositions. The position is taken that the assignments to Charles A. Hinsch & Company are not legal assignments. The pertinent part of the assignments, all substantially in the same form, reads: ''In consideration of the services to be rendered by the Charles A. Hinsch & Company * * * through necessary court action * * *. The condition of the foregoing assignment is this, to-wit: Within sixty (60) days after the Court of Appeals of Kentucky renders an opinion favorable to the validity of the indebtedness so above evidenced * * *, then in that event the said Charles A. Hinsch & Company obligates itself to pay to said Bank, for my (our) account, the sum of $1,394.87, which being done, the Bank is hereby authorized to transfer the said evidence of debt to the Charles A. Hinsch & Company above named. This assignment is made on the further condition that *all expenses connected with the court procedure* necessary to establish the validity of the indebtedness against Owsley County, and the tax to pay same, is borne by the Charles A. Hinsch & Company,

without recourse on the undersigned assignor; and to pay the above named amount as agreed net without deduction to the Escrow Agent, Farmers State Bank * * * for my (our) account.''

It is insisted that the purported assignments show on the face that there is no complete assignment; that the transfer is not a present one and is nothing more than a mere agreement to assign; and that actually the holder of the fund retains control of it. It is argued that, where those elements are present, there is no assignment and such a situation is fatal to the claim of the assignee. In support of that position the general law is cited. 4 Am. Jur., Assignments, Section 80.

The record discloses that, in addition to what might be termed the ''long'' assignment above, there is also a ''short'' assignment. The pertinent part of the ''short'' assignment, after a recitation of the consideration, which was the amount of the judgment to be paid by the Charles A. Hinsch & Company in accordance with an agreement entered into theretofore, reads: ''* * * I (we) do hereby sell, assign, transfer and set over the above stated judgment, interest and costs, to the said Charles A. Hinsch & Company of Cincinnati, Ohio, heirs and assigns, without recourse, and direct the Clerk of the Circuit Court to enter this assignment of record.''

It will be noted that in the long assignment of the judgments is to be found the time, place, and manner of payment of a sum certain which constitutes the consideration flowing to the assignor. In the short one the assignment and transfer are absolute and without recourse, and direction is made to the Clerk of the Circuit Court to enter same of record. Thus, it will be seen that the fatal elements mentioned by appellees above are not present.

It is insisted that since all expenses connected with the court procedure necessary to establish the validity of the indebtedness are to be borne by Hinsch & Company, the attempted assignments are champertous and maintenous and, therefore, void. Both appellants and appellees cite 10 Am. Jur. on the subject of champerty and maintenance. We deem it unnecessary to go into an elaborate discussion of the subject since much has

been written thereon in available texts and in court decisions. In order that we might see the moving and prime consideration in the more modern approach to the law of champerty and maintenance, we quote from 10 Am. Jur., Champerty and Maintenance, Section 1: "The early law rigorously guarded the conduct of litigation, and there is authority for the proposition that maintenance was an unlawful upholding of the plaintiff or defendant in a cause pending in suit by word, writing, countenance, or deed. Modern authority, however, has introduced the idea that maintenance is not committed unless something is done which tends to obstruct the course of justice, or is against good policy in tending to promote unnecessary litigation, and is performed under a bad motive. * * * A definition in consonance with the modern view, and often judicially stated, is that maintenance means the act of one improperly, and for the purpose of stirring up litigation and strife, encouraging others either to bring actions or to make defenses which they have no right to make, * * *."

KRS 372.060, dealing with this question, reads: "Any contract, agreement or conveyance made in consideration of services to be rendered in the prosecution or defense, or aiding in the prosecution or defense, in or out of court, of any suit, by any person not a party on record in the suit, whereby the thing sued for or in controversy or any part thereof, is to be taken, paid or received for such services or assistance, is void."

Thus, we have a codification of the common law upon the subject of champerty and maintenance. In the light of the above, let us look at the facts in this litigation. It cannot be consistently maintained that the persons who obtained judgments in the Owsley Circuit Court could not assign them. It follows, if they had a right to be assignors, someone, as a correlative right, could be assignee. This assignment was made before this action was brought. It is further to be noted that the proceeds of the assignments are not to be divided between assignors and assignees; that before the commencement of the action, assignors' entire rights in the judgments sought to be enforced in this action, had been assigned; and that the amount to be paid therefor was fixed. It will thus be seen that the elements entering into and calling for the early law, which so rigorously

guarded the conduct of litigation, are not present here. We think the assignments are valid and binding in every respect.

It is further insisted that Charles A. Hinsch & Company is not the present owner of the right to be enforced, and, therefore, not the real party in interest.

It is insisted that, since the assignments as exhibits, are at variance with the allegations of ownership as found in the petition, the exhibits must prevail. Kessler v. Grasser, 300 Ky. 89, 187 S. W. 2d 1012; Woolery v. Smith, 302 Ky. 725, 196 S. W. 2d 115. The answer to that is that all these assignors entered appearance, either as plaintiffs or as intervening petitioners, wherein they disclaimed any right of control in or over the assignments and stated that they had assigned all right, title, and interest that they had in and to the judgments.

It is next contended that there were other holders of judgments or warrants, which were of the same approximate date and of equal dignity with the judgments sued on, who should have been made parties to the action, and failure so to do was proper ground for sustaining special demurrer to the petition. In support of this position, Morgan County v. Governor of Kentucky, et al., 288 Ky. 532, 156 S. W. 2d 498, is cited. The Morgan case is not controlling in this situation since it has to do with bonding and bonded indebtedness under the County Debt Act, KRS 66.280 et seq., wherein there was a possibility as a practical matter of prejudicing the rights of prior bondholders. Here there can be no prejudice to the rights of those who have valid debts against the County. In no way would they be foreclosed, nor would the decision here be res adjudicata as to them.

There remain two questions to be disposed of: (1) Can appellees now go behind a valid judgment and attack its validity? (2) Can the Fiscal Court of Owsley County be required to levy a tax in excess of 50c on each $100 of the assessed valuation, where it is shown that a 50c levy will not produce sufficient monies to pay the necessary governmental expenses of the county and to create a sinking fund for the retirement of its debt within 40 years?

We are not content to state as a mere abstract truism that appellees cannot at this late date attack these

judgments as being void at their inception because violative of Sections 157 and 158 of our Constitution. True, we held in City of Catlettsburg et al. v. Fabric Fire Hose Co., 264 Ky. 594, 95 S. W. 2d 285, and in Perry County et al. v. Kentucky River Coal Corporation, 268 Ky. 78, 103 S. W. 2d 689, that the limitation on the rate of taxation fixed by Section 157 of the Constitution cannot be avoided by permitting obligations to take the form of judgments. However, the answer is the decision in Griffin et al. v. Clay County, et al., 304 Ky. 592, 201 S. W. 2d 733, 737. Appellees undertake to distinguish the Clay County case from this one and set it up not so much in contrast to but in distinction from. It will be noted that the action in the Clay County case involved two classes of indebtedness and that one form of the indebtedness was a floating debt made up of claims which had been adjudged to be valid and binding obligations of Clay County by a judgment of the Clay Circuit Court. The latter class of indebtedness is such as we have here. Consequently, the Catlettsburg and Perry County cases must yield to the later Clay County case.

We now approach the question as to whether or not Owsley County can be required by Section 159 of the Constitution to levy a sufficient tax to service the debt, even though the rate exceeds the 50c on each $100 of the assessed valuation as mentioned in Section 157. This would lead us directly to a consideration of those two sections of the Constitution. We think it unnecessary to burden this opinion with further discussions of those sections since we have an elaborate and exhaustive treatment of them in the Clay County case. We yet think that the construction therein is neither strained nor artificial. The two sections should not be considered as irreconcilably pitted against each other. A meaning should be given to each in its relation to the other. We think the facts and the pleadings in the instant case are so nearly identical to those in the Clay County case as to require an application of the same rule. The court below, under the authority of the Clay County case, should have required the Owsley County Fiscal Court to levy the tax, even though in excess of 50c on each $100 of the assessed valuation, and create a sinking fund for the retirement of its debt within forty years. However, we desire again to reiterate our position as taken in the Clay County case, and call attention to the fact

that "The public generally is now on notice that this court will henceforth adopt a sound and healthy construction of our Constitution, and credit extended to taxing districts in disregard of our Constitution and the comments herein, and in Payne v. City of Covington [276 Ky. 380, 123 S. W. 2d 1045, 122 A. L. R. 321], will be at the creditor's risk." In order to avoid further entanglement in apparent contradictions and to be certain that our position, as to the questions involved herein, will not be left in such a nebulous state as to create immeasureable confusion and uncertainty, we insist there will be no judicial relaxation. This opinion, together with the Clay County case, must not in any way serve as a soporific to encourage lethargy and indifference or lead to a conclusion that some chimerical plan to side-step the specific constitutional provisions will be countenanced.

This conclusion obviates a discussion of the question of champerty and maintenance raised by the intervening petitioners on their cross-appeal.

The judgment is reversed with directions to enter judgment consistent herewith.

For the reasons stated in the dissenting opinion in the Clay County case, Judges Helm and Stewart dissent herein.